| 67 | 345 |
| 82 | 28 |
| 83 | 258 |
| 67 | 345 |
| 85 | 67 |

No. 2288.

## M. E. GILDER *v.* THE CITY OF BRENHAM.

1. COMPETENCY OF WITNESS—STATUTE CONSTRUED.—The inhibition contained in Article 2248, Revised Statutes, against executors, administrators and guardians, which prohibits them, as well as heirs of the decedent, from testifying as to any transaction with or statement by the testator or ward, unless called thereto by the opposite party, is applicable only to those who are parties to the suit, and does not render incompetent other persons who, though interested in the issue to be tried, are not parties.

2. CASES DISTINGUISHED.—This case distinguished from Simpson v. Brotherton, 62 Texas, 170.   There the widow was held incompetent to testify, not because she was interested, but because she was a real party, though not named, in a suit brought by the husband to recover her interest.

3. DEDICATION—CITIES AND TOWNS.—The owner of a strip of land in a town sold in 1861 one end of it, declaring at the time that he intended to leave a street between the portion sold and the other end, pointing out the part to be used as a street, and declaring that he had other property that would be benefited by it.   In 1876 the purchaser enclosed the lot so purchased, and the vendor then showed him the corners of his lot, declaring that the space, which was the usual width of a street, between it and the other end of the lot which he had sold, was left for a street.   Other parties purchased afterwards and improved, with reference to the space referred to being a street, and relying on the declarations of the original owner to the effect that a call for a reservation of a street was not necessary, as he had given the space to the public for a street.   In a suit to restrain the city from removing an inclosure on the strip of land claimed to have been dedicated, *held:*

(1) That the facts constituted a dedication of the space as a street, so far as the owner could by his own action, make a dedication.

(2) But in a suit between the city authorities and the representatives of the original owner, before the city could assert control over the property as a street, it must appear that it had accepted the dedication.

(3) Acceptance of the dedication may be implied on the part of the city, from acts clearly indicating a purpose to accept.

(4) Acceptance of the dedication on the part of the city might also be implied, after continuous use by the public for such a period of time as would authorize the presumption of a grant, when adjacent improvements have been established with reference to the property as a street.

(5) The English rule, that acceptance may be implied alone from long continued use by the public, can not obtain in Texas as applicable to every case.

(6) The city never having marked the space claimed to have been dedicated as a street, delineated it on its maps as a street, or claimed it otherwise as such, an acceptance of the dedication could not be implied.

(7) Under the circumstances, the city council had power in 1880, by resolution, to authorize the mayor to relinquish its claim upon the property as a street, notwithstanding the equivocal use made of the property by the public.

(8) Private parties can not force upon a city the acceptance of a dedication of property as a street, with the incident burthens of repair and improvement, without the assent of its properly constituted authorities.

(9) Without determining the rights of adjacent owners who purchased with reference to the dedication, the city had no control over the premises, and the occupant was entitled to an injunction to restrain it from removing his enclosure.

APPEAL from Washington.     Tried below before the Hon. I. B. McFarland.

Trespass to try title and for damages, brought by the appellant M. E. Gilder, administratrix of A. J. Gilder, deceased, as plaintiff, against the City of Brenham and Frank Harvin, the city marshal, appellee, as defendants, to recover the title and possession of a certain lot in said city, and to restrain the defendants from interfering with plaintiff's possession thereof, and for damages for her eviction therefrom.   The case was tried by the judge without a jury and resulted in a judgment for the defendants; from which the plaintiff appealed.

The statement of facts in this cause was made by the presiding judge after disagreement of counsel.   It is too long for insertion, but the portion of it deemed important is indicated by the syllabus.

The judge found as conclusions of fact that the lot or parcel of ground in controversy, originally belonged to A. J. Gilder, and

that said Gilder had in his lifetime dedicated the same to public use as a street.   The premises, being forty-three feet by one hundred and eighty-four, were a part of lot ninety-one, on the original town plat of the city of Brenham.   Lot ninety-one is one thousand and twenty-five feet in depth by one hundred and eighty-four feet in width.   In 1861, Gilder, who had owned the lot, conveyed to Thomas Dwyer a strip of three hundred feet off the north end of it.   In 1867 he conveyed to H. Levinson a strip of 682 feet off the south end, leaving the premises in controversy forty-three feet by one hundred and eighty-four, between the two tracts so conveyed.   No mention of a street is made in either deed and no map or plot or other written memorandum of dedication appears.

Thomas Dwyer testified that when he bought in 1861, Gilder told him that he intended to reserve a street across lot ninety-one, and pointed out the premises in controversy as the ground he intended to reserve.   He gave as a reason for making the reservation that he owned other property which would be benefited by having a street through the lot.   Dwyer did not enclose his lot until 1876, at which time Gilder showed him where his southeast corner was, and said that the space between that and the Levinson lot, which was then enclosed, was left for a street.   Previous to this time all of lot ninety-one lying north of Levinson's purchase was open and people passed across at will, there being several well defined pathways running across it in different directions, one being continuous across it and lot ninty-five in nearly a direct line.   No mention of a street is made in Gilder's deed to Dwyer.

William Axer testified that in 1868 he bought from J. L. Dallas a part of lot ninety-five, and enclosed and improved it the same year.   At that time the roadway or street spoken of by Dwyer and others was open, and the portion of lot ninety-five which witness wanted to buy lay south of it.   Dallas declined to sell him that portion of the lot alone, on the ground that the portion lying north of the roadway would be too small to be saleable, and witness accordingly bought up to Dallas's north line, including the street or roadway.   Witness then enclosed his lot, leaving, in lieu of the so-called street, an alley of twenty-five feet on the north line, and built his house on what had previously been the street or roadway.   While he was building, Gilder came to him and objected to his building on the "street," as he called it, saying that he and Dallas and Portis (Portis owned the west half

of lot ninety-five) had agreed that the street should run through there, all the way from Goat Row to West street. Since then Dallas and Portis and their vendees have closed up the whole of the eastern portion of lot ninety-five, and there is now no outlet through to West street.

Gilder was also the owner of lots eighty-eight and eighty-nine, lying east of ninety-one, from which they are separated by Ant street. In 1874 he conveyed part of lot eighty-eight to F. Busse. In 1877 he conveyed to H. Hodde the northeast quarter of lot eighty-nine. His own residence was on the northwest quarter. In both of these deeds a forty-five feet street between Busse on the north, and Hodde and Gilder on the south, was reserved, and on the city maps subsequently made this street is platted; but on none of the maps exhibited are the premises in controversy marked as a street.

Harris and Franke, occupying portions of the lot sold by Gilder to Levinson, abutting on the premises in controversy, testified that it would greatly inconvenience them and injure their property to permit the plaintiff to close up the "street." In some of the deeds under which these witnesses hold, the calls are for the north line to abut on what is called Gilder street.

It does not appear that the city ever accepted the alleged dedication, or that it ever used or claimed the premises until February 3, 1886, and in 1880 it expressly disclaimed any such right or authority.

*Sayles* and *Bassett,* for appellant, on their proposition that the evidence did not show with sufficient certainty a dedication of the premises to public use, or an acceptance thereof by the city, cited Oswald v. Grenet, 22 Texas, 94; Lamar County v. Clements, 49 Texas, 347; Ramthun v. Halfman, 58 Texas, 551; Pierpont v. Harrisville, 9 West Virginia, 215, 218, et seq.; Landis v. Hamilton, 77 Missouri, 554; Grinnell v. Kirtland, 6 Daly (New York), 356; Livingston v. Mayor of New York, 8 Wendell, 85, 97; Wyman v. Mayor of New York, 11 Wendell, 487; Niagara Falls Suspension Bridge Company y. Bachman, 66 New York, 261.

*Beauregard Bryan,* for appellee, that Dwyer was a competent witness, cited 1 Greenleaf on Evidence, sections 180–189; Wells v. Fairbank, 5 Texas, 582; Rector v. Hudson, 20 Texas, 234; Wallace v. Wilcox, 27 Texas, 60; Bird v. Pace, 26 Texas, 488;

Evans v. Hurt, 34 Texas, 111; Stroud v. Springfield, 28 Texas, 649; Hurt v. Evans, 49 Texas, 311.

That the lot was dedicated, he cited Dillon on Municipal Corporations, volume 2, sections 627–642; 22 Texas, 94; 23 Texas, 409; 49 Texas, 354.

GAINES, ASSOCIATE JUSTICE.    We do not think the court below erred in admitting the witness Dwyer to testify, over appellant's objection, as to conversations which occurred between him and appellant's intestate in regard to the dedication to the purposes of a street of the premises in controversy. The Revised Statutes, in Article 2246, re-enact the first section of the Act of May 10, 1871, which removed the restrictions against receiving the testimony of the parties to the suit, and of persons interested in the issue to be tried.    The effect of Article 2248 is to except from the operation of the former provision parties to a suit in which the representatives of a decedent or a guardian may be either plaintiff or defendant, in so far as the testimony upon either side relates to any conversation or transaction with the decedent or ward.    No mention is made of persons interested in the issue to be tried, and hence they are not excepted from the provisions of the previous article.    In the case of Simpson v. Brotherton, 62 Texas, 170, the wife of appellee, who was plaintiff in the court below, was held incompetent to testify as to the declarations of appellant's ancestor.    There the suit was brought by the husband to recover an interest in land, which interest was claimed as community property of himself and wife.    Her testimony was not held inadmissible because of her interest in the proceeding, but upon the ground that, though not named as such, she was in fact a party to and would be bound by any judgment that might be rendered against her husband.    In this case Dwyer was in no sense a party to the proceeding, and will not be concluded by the judgment.

We are not prepared to say that the evidence was not sufficient to show a dedication by plaintiff's intestate of the land in controversy to the purposes of a street.    His declarations to Dwyer, at the time he sold to him, and his subsequent declarations; his conveying the land upon both sides up to the disputed strip, leaving just the ordinary width of a street, and other circumstances, tend very strongly to show a dedication.    The boundary was well defined, and his purpose clearly and unequivocally stated.    This makes a dedication so far as he could make it of his

own motion.  (Oswald v. Grenet, 22 Texas, 94; Lamar Co. v. Clement, 49 Texas.)

But the controversy here is not between Gilder's administratrix and those who have bought neighboring or adjacent property upon the faith of his acts and declarations.  It is between the administratrix and the city, and we are of opinion, that before the city can set up any right of control over the property, it must show that it has accepted the dedication.  The opening and repair of a street subjects a municipal corporation to expense and may subject it to liability to individuals for damages resulting from any failure to keep it in safe condition.   This burden can not be imposed by "the will of an individual who from motives of patriotism, convenience or gain, might lay off his land into town lots or streets or lay out a highway through his land."  (State v. Carver, 5 Strobhart, 217.)   The authorities generally agree that in order to charge a municipality with the duty of repairs, either an express or implied acceptance of the dedication must be shown.   (State v. Carver, supra; Tegarden v. McBean, 33 Mississippi, 283; Town Council v. Lythgoe, 7 Richardson, 435; Pope v. Union, 18 New Jersey Equity, 282; State v. Bradbury, 40 Maine, 154; Niagara Falls Bridge Company v. Bachman, 66 New York, 261.)   And, it seems to us if it has no duty in regard to the street, it should have no control over it, whatever the rights of third persons with respect to the proposed dedication may be.  It must be either a public street or not a public street.  If a public street, the corporation is responsible for any damage that may result from its neglect to keep it in repair.   If not public, then it is not perceived that the charter ordinarily granted to a town or city, would invest its council or officers with any authority over it.

But it is held that an acceptance may be implied.   This is unquestionably so, when such acceptance is evidenced by acts clearly indicating that purpose, such as making repairs upon the proposed street or platting it upon the official maps.   And it is also said in many cases that this implication may cease from long continued use by the public.   This seems to be the doctrine in England, but in most of the American decisions which we have examined in which this principle is announced, there was evidence of acts on part of the municipal authorities themselves tending to show adoption of the dedication, in addition to the long use by the public of the property in controversy.

In many instances the value of the property and its situation and surrounding may be such, and the long continued public use

so unequivocal, that after the ordinary period for the presumption of a grant, both a dedication by the owner and assent of the municipal authorities will be presumed.

Cases may arise in our own State to which the English rule should be applied, but in our opinion we should not hold it a general principal, applicable to every case. In a State in which much of the land is vacant, both in town and country, and every one feels at liberty to pass at will over any uninclosed premises, the presumption ought not to prevail that the proper authorities have adopted a street or road from the mere fact of its long use as such by the public.

In the present case there is no evidence tending to show any acceptance of the dedication on the part of the city of Brenham. The strip in controversy was never worked or repaired by the city, and was not delineated upon the city map made by its authority. There being no enclosure for a long time on one side of it, it was passed over by the public in part, by roads or paths crossing it diagonally in different directions. There is no evidence of any use of the property that might not have been made if no dedication had ever been intended; and it is nowhere disclosed that the city ever claimed or recognized the property as a street until the year 1880, when the city council passed a resolution authorizing the mayor to relinquish any claim upon it, in the event that plaintiff would release all claims upon certain parts of Ant street, into which this disputed strip opened at right angles.

The charter of the city confers very enlarged powers upon the city council over its streets (Special Laws 1873, sec. 6, p. 14), but it is not necessary for us to consider whether the authority to vacate a street is granted or not. It certainly had the power to refuse a dedication when the agreement was entered into between appellant and the mayor; and, there having been no formal acceptance or act on the part of the authorities from which such acceptance could be presumed, up to the date of this contract, we think the council was authorized to relinquish under the circumstances, notwithstanding the equivocal use of the premises by the public for a long length of time. To hold otherwise would be to decide that private parties could force the acceptance of streets upon cities, with all their burdens, without the assent of the authorities duly authorized to assent to it; for we know of no power in a municipal corporation to prevent the use

of any way as a street which the owner may see proper to leave open.

Conceding that the dedication here had been complete as to the city, it may still be a question whether the council was not authorized to compromise a dispute with appellant by enlargement of their claim upon the property in controversy, in consideration of an abandonment by her of her claim upon other property in dispute between them. (See Petersburg v. Mappin, 14 Ill., 193; 1 Dillon's Municipal Corporations, sec. 477.)

But it is not necessary for us to decide this question. It follows from what we had previously said, that the city had no right or control over the premises in controversy, and appellant being in possession, is entitled to have it restrained from removing her inclosures. We decide nothing in this case as to the rights of Dwyer and others who own lands adjacent to the disputed strip. Their rights, if any exist, are distinct from those of the city, and are not concluded by this judgment. We merely hold that appellee can not now claim the premises as a public street.

The judgment will accordingly be reversed and here rendered in favor of appellant, and against appellee, restraining it from interference, with appellant's possession and control of the premises in controversy, and for all costs, both in this court and the court below.

*Reversed and rendered.*

Opinion delivered February 11, 1887.