## No. 6472.

## FORT WORTH STREET RAILWAY COMPANY *v.* QUEEN CITY RAILWAY COMPANY.

1. ACCESS TO RAILROAD.—An owner of land adjoining the right of way of a railway company as an incident of such ownership has the right to grant the right of way to a street car railway company over and across such land to the railroad, subject, however, to the rights of the public to condemn and establish a public way. Such condemnation and appropriation, however, must be done under the law and upon compensation. The same rule would obtain if the railway company owning the track also owned the land adjoining the right of way.

2. SAME.—Until such appropriation, in a legal way, to the public use has been made, a right of way to one person or corporation across such land is entitled to protection. (Rev. Stats., 478, Sayles' Ed.)

3. INJUNCTION.—An injunction would properly issue restraining a rival street railway company from interfering with a right as in above stated facts.

APPEAL from Tarrant. Tried below before the Hon. R. E. Beckham.

March 2, 1887, appellant obtained a temporary injunction restraining the appellee "from the further construction of its line of street railway on the Texas & Pacific donation or reservation, between Main street, in the city of Fort Worth, and the Union depot in said city."

The allegations in the bill are substantially as follows:

The petition shows the corporate existence of the plaintiff and defendant and of the Texas & Pacific Railway Company; that Van Zandt, Hendricks and Smith were large stockholders in the plaintiff company, and had been since some time in 1870; that in 1875 the said Van Zandt and Hendricks conveyed to the Texas & Pacific Railway Company the aggregate amount of one hundred and fourteen acres of land in the city of Fort Worth on condition that it would build its line of railroad into Fort Worth and establish and maintain depots at the foot of Main street in the said city, or near the foot of it; that Smith paid one-half of the consideration for the land—sixty-eight acres—deeded to the railroad company by Mrs. Hendricks.

That the railroad company accepted the land on the conditions stated, and did in 1876 erect the passenger depot at the foot of Main street. That in 1882 the railway, for its own convenience, wanted to move its said depot from the foot of Main street to another point on its line in Fort Worth, one thousand four hundred feet east of its then location. That long before 1882 the appellant, authorized by its charter and an ordinance of the said city, had constructed at great expense and were operating a line of street railway along Main street to the foot of Main street, and that its operation was a source of considerable profit to the stockholders.

The petition further shows that the appellant in 1882 bought and paid the sum of seven hundred dollars for the right of way for the Texas & Pacific Railway Company over certain lots of land in Fort Worth, and had deeds made to it, and that the said railroad company went into the possession of the same, and was still in possession of and using it.

The petition further shows that, in order to remove the depot from the foot of Main street, as the Texas & Pacific Railway Company desired, it was necessary to get the consent of Mrs. Hendricks, J. P. Smith and Van Zandt, the first two of whom had deeded sixty-eight acres of land and the latter forty-six acres to the railway company, on condition that the depot should be maintained at the foot of Main street; that the said parties consented to the removal on the consideration that the appellant was to have the exclusive right to extend its line of road on the said railway's reservation to the Union depot. Both the deeds of release (the deed from Mrs. Van Zandt and of Mrs. Hendricks) recite the grantor to be a stockholder in the appellant company, and a consideration to be "the grant of an exclusive license to the Fort Worth Street Railway Company to construct and operate its line of railway from its present terminus at the foot of Main street in the said city eastward on the road recently constructed to the Union passenger depot." It is alleged that Mrs. Hendricks and Van Zandt, in stipulating for the exclusive right, acted for the appellant.

It is alleged as further consideration paid by appellant that it was required by the Texas & Pacific Railway Company to pay one-fourth of the total cost (forty-eight hundred dollars) of the roadway it had built from the foot of Main street, wholly on its own reservation, to the Union depot.

That it did pay it twelve hundred dollars; that in addition to

such stated considerations, the appellant was required to give, and did give to the railroad company a bond to indemnify it for demands for injuries to persons or property on account of the operations of a horse railroad on Texas & Pacific reservation.

It is averred that all of the papers (mentioned in the record) constitute a part of the negotiations and transactions by which the Texas & Pacific Railway Company obtained consent to the removal of the depot, the ownership and possession of the right of way over certain lots, the aid and assistance of the appellant in constructing the roadway on its reservation to the depot, the indemnifying bond, and the appellant on its behalf the exclusive license claimed by it. That had not the license been made exclusive it would have been of little value, and the appellant would not have rendered the stated considerations therefor.

It was alleged that the roadway was constructed without the aid and assistance of the city of Fort Worth; that the city had never condemned and appropriated it as a street and has never claimed it as such, and that it could not have condemned it had it so desired.

The petition complained that the appellee was constructing a line of horse railway in part on the said reservation, between Main street and the Union depot, whereon the appellant had acquired such exclusive right, and that it was proceeding so to do with both actual and constructive knowedge of the right of the appellant, and against its protest, that all the deeds and instruments of writing ·mentioned in the petition and this statement) had been on record in Tarrant county since 1882; that its work was so begun under a license unadvisedly granted to it January 8, 1887, by the land commissioner of the Texas & Pacific Railway Company, forgetting at the time the contract with the appellant. That according to the terms of the license to the appellee it was to remove its track within ninety days after notice from the Texas & Pacific Railway Company to do so. That on the seventeenth day of February, 1887, the said commissioner and the receiver of the Texas & Pacific Railway Company revoked and canceled said license, and forbade the further prosecution of the work of construction and directed the removal of the work already constructed within twenty days.

It is alleged that if the defendant is permitted to complete its

work, and put in operation its line of road, it will greatly depreciate the value of appellant's right and privilege, and the property and the property rights of the appellant, by taking away its patronage and the profit derived from its patronage; that the damages were of such nature as to be incapable of pecuniary estimation, and were therefore irreparable. That without authority from, and without the consent of appellant, the defendant was proceeding to cut the rails constituting aplant's track, and lay its rails between the rails of said track for the purpose of crossing with its cars appellant's track and roadbed, and that it intended to proceed to run its cars across said track and roadbed, and that said acts would constitute a continuing wrong, injury and nuisance to the appellant. That the rails and roadbed had never been condemned for any street purpose by the city of Fort Worth, and that the acts of the appellee were an appropriation to its use of the private property of the appellant without compensation.

The defendant answered, excepting. "1. The contract set forth in plaintiff's petition, and upon which its exclusive right to build and operate a street railway line to and from the public union depot at Fort Worth, Texas, is utterly null and void, and is against public policy, and is contrary to the Constitution and laws of the State.

"2. Said petition does not show that the Texas & Pacific Railway Company ever entered into or attempted to make and execute said contract, or that John C. Brown had any authority from said corporation or its board of directors to make any such contract, or that said corporation or board of directors ever ratified or confirmed such contract by any action of its board of directors or otherwise.

"3. Because the allegations contained in said petition show no equities to which the plaintiff is entitled, nor any just cause of complaint against this defendant, and further shows that if it has any cause of action it is against the Texas & Pacific Railway Company, and not against this defendant."

Then follows a general denial and a special denial of each ground or cause of action set up in the petition, besides other matters. The answer, verified by affidavit, is as follows:

"And for special answer, affiant says that the line over which it has been, and was, constructing the railway track was along and upon a public street in the city of Fort Worth, commonly known and called Front street, which extends from

the foot of Houston street and Main street to or near the union depot of the Texas & Pacific, Missouri Pacific, Gulf, Colorado & Santa Fe and Fort Worth & Denver railways; that said street was made by filling in dirt so as to bring it to a level with the grades of the railroads and of the depot grounds and yards; and that said fill, when first made, was about ten feet above the natural surface of the land on which it is built, as it approaches the said depot; that near the said depot the said street is narrow—not more than fifty feet in width—and its edges had worn and washed down, and the plaintiff company had built two street railway tracks over the same, occupying nearly all of the available land surface of said street with its tracks; and defendant, in order to procure and have ingress and egress to said union depot over said street, was compelled to, and did, fill up and level up one side of said street at the end thereof, at the said depot, and did fill a few more feet on the lands of the Texas & Pacific Railway Company than had been hitherto used for street purposes, but defendant avers that it covered no more land in making said fill than was absolutely necessary to enable it to reach the union depot, as it had in law a right to do. That when the aid Texas & Pacific Railway Company placed its said unions depot out in the midst of the lands donated to it by the citizens of Fort Worth, it thereby in law, as it was bound to do, conceded, granted and dedicated to the public the right to pass over such of its lands as might be reasonably sufficient to accommodate the demands of the public in all the various modes of travel, including street car lines, in going to and coming from said depot; and that defendant has the right of ingress and egress to and from said depot; and that plaintiff, who is occupying all of the traveled surface of said street with its two tracks, ought not to be heard to complain of the defendant in trying to get to said depot on the side and edge of the street."

"Defendant further states that from the entrance of Houston into Front street, the only route over the streets of the city and reaching the union depot, is over and upon Front street; that it is the only street that leads into and upon the yard of the union depot, and for the distance of about one hundred yards from said depot yard the travel upon Jones, Calhoun, Rusk, Main, Houston and Throckmorton streets must all pass over said portion of said street in going to and coming from said depot, and that it is absolutely necessary to the accommoda-

tion of the public that said way be used so as to accommodate the combined stream of travel that continually, of necessity, flows over it.

"That the few feet—not more than five or six—occupied by defendants, is not in use by the said railroad companies nor any of them, and it is necessary, in order to reach said union depots and to permit passengers to get on and off its cars at the sides thereof and to use and pass over the land filled in by the defendant, and that the same was dedicated to the public by said Texas & Pacific Railway Company, when and at the time and by the act of placing its said depot where it at present stands, in the early part of the year 1882, and with the knowledge and consent of the Texas & Pacific, it has been used by the public, and it is the only means of egress and ingress to and from the depot." The defendant expressly denies that the Texas & Pacific Railway Company granted an exclusive right to the plaintiff "to and from said depot;" that the vice president of the railroad company ever had any authority from it or its stockholders or board of directors to make the grant; that the by laws, rules or regulations gave him no such authority over the lands and property of the railroad company; that the company had no power or authority to make such a contract with the plaintiff."

The answer alleged the incorporation of the defendant and the grant of authority by ordinance of the city of Fort Worth to build a line of road on Houston, Front and Jones streets to the depot.

It denies that it had any notice of the plaintiff's contract with the railroad company granting an exclusive right when it obtained the right to build to the depot; that, ignorant of it, it had spent large sums of money in buying material and cars, in building its road, filling and grading its line that it had built, and almost completed the laying of its ties and rails on its track over its line from above the foot of Houston street across Main to the said depot at a cost of "to wit: six thousand dollars," and was about ready to begin the use of the part of the track enjoined; that the plaintiff stood by and saw it so do, and spend its money and gave it no notice of its claim and contract; that by this acquiescence and silence during the work, and on and before purchasing its materials, it misled the defendant and caused it to spend the said sum of money; that it would not have done so had it known of the plaintiff's

claim; pleading these facts as an estoppel against the complainant.

The complainant filed supplemental petition disclaiming any rights as against the right of defendant to use and occupy Front street; alleging that protection only was asked to the extent of the reservation. etc.

The defendant moved to dissolve the injunction for want of equity in the bill and because the material facts were denied in the answer.

The case was tried upon the bill, answer and exhibits; the injunction was dissolved and bill dismissed; the plaintiff not amending nor requesting that it be held for trial as an original bill.

The plaintiff excepted and the assignment of errors questions the judgment, dissolving the injunction and dismissing the petition.

*John D. Templeton* and *Horace Lee Washington,* for appellant: 1. The petition showed sufficient grounds for an injunction. (Constitution, art. 1, sec. 17; The Gas Company Cases, 115 U. S., 650 and 683; Hobbs v. Amador & Sacramento Co., 4 Pac. Rep., 1147; Commonwealth v. Pittsburgh R. R. Co., 62 Am. Dec., 372 (in this case there is a definition of what is meant in a judicial sense by the word "irreparable" in matters of injunction); East & West R. R. Co. v. E. T. V. & Ga. R. R., 22 Am. and Eng. R. R. Cases, 81; High on Injunctions, secs. 701, 702, 722, 912, 913, 914, 829; Northern Pacific R. R. Co. v. B. & M. R. R. Co., 4 Fed. Rep., 298; Mayor v. Storin, 106 N. Y., 1.)

The answer of the defendant (appellee) did not deny all of the equities of the petition so as to entitle the defendant (appellee) to a dissolution on account thereof. (Burnley v. Cook, 13 Texas, 585; Texas & St. Louis R. R. Co. v. Robards, 60 Texas, 545; Story's Eq. Plead., 9 ed., sec. 849a and note a; Id., 852; High on Injunctions, secs. 1513 to 1515, 1470; Godden v. Kimmel, 9 Otto, 207; Clark v. Riesdyk, 9 Cranch., 160; Poor v. Carleton, 3 Sumner; United States v. Parrott. 1 McAllister, 271; Everly v. Rice, 4 N. J., 553; Ladies Benevolent Society v. Benevolent Society, 2 Tenn. Ch., 77; Love v. Allison. 2 Tenn. Ch., 111; Teasey v. Baker, 19 N. J. Eq., 61; Horner v. Jobs, 13 N. J. Eq., 212; Pekin v. Collins, 3 N. J. Eq., 486–487; Leading Cases in Eq., 1415; Hays v. Billings, 69 Iowa, 387; Hoskins v. McElroy, 62 Iowa, 508; Fargo v. Ames, 45 Iowa, 494; Hughes v. Tinsley, 80 Va., 259; Morawetz on Corporations, secs. 152–154.)

*Hunter, Stewart & Dunklin,* for appellee: The petition showing on its face that the roadway was constructed by a railroad company for the "purpose of reaching the depot most conveniently," and "for purposes of travel," and that its construction "became necessary on account of the rough and broken condition of the ground," is a square admission that the roadway in controversy was dedicated at the time it was built by the Texas & Pacific Company to public use as a street, and, being a street by public use and dedication, the railroad company could not grant or withhold rights to anybody, exclusive or otherwise, in the use of that street. Even if this roadway had not been built for and dedicated to the use of the public, the Texas & Pacific Railway Company could not grant an exclusive right to any particular person or class of persons to ingress and egress to and from its public depots, or across its lands, and such a contract would be utterly null and void, and would be respected neither in law nor in equity. (Const. of Texas, art. 1 sec. 26; Pierce on Railroads, 260, 496, 497; void as against public policy, see Greenhood on Public Policy, 511, 513, 672, 673, 674, 675; on Dedication of "Roadway" to Public Use, see Cincinnati v. White, 6 Pet., 431 to 440; 10 Am. and Eng. R. R. Cases, 266, taken from 75 Ind. Rep., 222; 2 Greenleaf's Ev., 10 ed., secs. 622, 623; 2 Dillon on Mun. Corp., 3 ed., secs. 631, 635.)

The Texas & Pacific Railway Company having laid out the roadway, as it is termed in appellant's petition, over its land to its depot, for the accommodation of the public in reaching the depot, thereby dedicated said way to public use as a highway as effectually as if it had been done under a solemn instrument in writing. In Cincinnati v. White, 6 Peters, 431, it is said: "There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the consent of the owners of the land, and the fact of its being used for the public purposes intended by the appropriation." To the same effect we cite 10 American and English Cases, 266; 2 Greenleaf's Evidence, sections 662 to 663, and Dillon on Municipal Corporations, sections 631, 635, 636. The Texas & Pacific Railway company, having dedicated said way to public use, had no further power or control over it. Said way at once became one of the thoroughfares of the city of Fort Worth and was then under the exclusive control of the city council of the said city. Article 375, Revised Statutes, gives the city council

the exclusive control and power over the streets, alleys, public grounds and highways of the city, and still the city council with this exclusive power and control over the streets within its corporate limits, could not have granted the appellant the exclusive privileges on said highway it claims to have ob-tained from a railway corporation which had no power or control over said highway at all. A city council can not grant a street railway the exclusive right to occupy a street with its track, much less can a railway company grant such a high privilege and thus create a monopoly in the public thorough-fares leading to its depot. (2 Dill. on Mun. Corp., secs. 715, 716; Cooley on Const. Lim., secs. 251, 252, 253.)

It would certainly be a monstrous doctrine to hold that a railroad company could place its depot at a point on its line acces-sible to the public only over one route, and that over its own land, and then be allowed to peddle out exclusive privileges to certain street car and transfer companies to travel over and use said way, to the exclusion of all others. The Texas & Pa-cific Railway Company might, with the same propriety in this instance, have granted the Fort Worth Transfer Company the exclusive right to run its line of 'busses and baggage wagons over this highway. Such an attempt would be void as against public policy. Mr. Greenhood, in his work on Public Policy, page 671, says: "A contract whose object is to secure to the obligee a monopoly in business controlled by a public corpora-tion or quasi public corporation, or which gives to one an ex-clusive use for public purposes of lands held by such corpora-tion, or by a private owner, if subject to the right of eminent domain, is void."

WALKER, ASSOCIATE JUSTICE. It is alleged in both bill and answer that the reservation or donation upon which the rights claimed by the complainant attach, is owned by the Texas & Pacific Railway Company. It does not appear that the right claimed is upon what the statutes of the State denote as the "right of way," nor is any limitation upon the ownership al-leged or shown. It appears that the right claimed was the subject of negotiations and contracts between the Texas & Pacific Railway Company and complainant and persons acting in its behalf; that under these contracts the complainant paid valuable considerations; that the right was conceded to appel-lant under onerous conditions; that the contracts, as they

related to an interest in the land, were duly recorded in June, 1882; that complainant expended one-fourth of the cost of making the roadway, and at once occupied it under said contract; and, that further, the defendant, having only the conceded right to occupy Front street, was interfering with said right. These allegations gave the right to the injunction.

The answer, taken as a whole, can not be understood as intended to assert that the locality called *Front street* included the reservation or any part of it. Nor can the several denials in the answer be considered as applicable to the specific acts charged in the bill and not directly denied. The denial of the power of the Texas & Pacific Railway company to make said contract, of the power of the officials to make it, and that no exclusive right was in fact granted, can be regarded only as calling in question the legal effect of the several detailed acts charged in the bill. The same questions are raised in the exceptions. Affirmatively the answer alleges that the acts of the Texas & Pacific Railway Company, in moving its depot, and in constructing the roadway which the tracks of the complainant occupy, as a necessary means of access to the depot, was a dedication in law of the roadway to the public — thus negativing the exclusive right claimed in the bill.

The conceded power in the Texas & Pacific Railway to dedicate this roadway includes in it, as an incident of ownership, the power to refuse to make such or any dedication, and the power to grant an easement upon it; and to make a limited or restricted grant to public use.

The necessity for such roadway would be subordinate to the bill of rights (sec. 17) providing that "no person's property shall be taken * * * or applied to public use without adequate compensation being made to the owner, unless by the consent of such owner." The easement granted to complainant is not inconsistent with the rights of the public in passing to and from the depot, and the dedication, if made at all, was subject to the easement already owned by complainant.

This limitation upon any right the public might acquire was evidenced by the contemporaneous recorded instruments made to and by the Texas & Pacific Railway Company, and by the actual occupancy of the roadway and user under the grant. These facts were notice that but a restricted use was intended by the grantor or enjoyed by the public; and precluded the

conclusion against complainant that the roadway was dedicated to the public use.

We are not advised of any limitations upon the ownership by the Texas & Pacific Railway Company conflicting with the grant of such easement upon lands not the "right of way." (Rev. Stats., arts. 4211, 4212, 4213.) With these facts alleged in the bill and not denied in the answer, we can not hold that such dedication is shown against the complainant.

In defense it is urged that the contract is against public policy—is a monopoly. The right is but an easement granted by the owner in fee — no more a monopoly than ownership of land. Like any other estate in land, it is subject to the law; can be taken for public use on process of law. The franchise of complainant itself is a creation of the law, and subject to it.

It is not shown that the city ever recognized the roadway as a public street — in fact the burden of keeping it in repair is shared by complainant. So far as shown in the record, the rights of the public are not involved in the controversy. They have not been asserted under the law. We have only the rights of ownership and control of the land by it owners, to be ascertained and protected.

Mutual contracts, fully executed between the Texas & Pacific Railway Company and the appellant, are alleged, giving the right to the plaintiff, independent of the express grant in the deed made by Vice President Brown. These details are not denied in the answer, save in the general terms before stated. The following authorities have been consulted: Pearce on Railroads, 260, 496, 497; 10 American and English Railroad Cases, 266; 6 Peters, 431; 2 Dillon on Municipal Corporations, sections 631, 635; 58 Texas, 553; 67 Texas, 345; 62 American Decisions, 372; 22 American and English Rrilroad Cases, 81; 106 New York, 1; 13 Texas, 585; 80 Florida, 263.

The motion to dissolve the injunction should have been overruled. The bill shows good ground for the writ, and the answer does not specifically deny the material allegations, so that the equities are not sworn away. It not appearing whether the case below was decided on demurrer or upon the bill and answer, the judgment will be reversed and remanded.

*Reversed and remanded.*

Opinion delivered June 12, 1885.