In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00026-CV

                                                ______________________________

 

 

                    LLOYD LAMBRIGHT AND ELAINE
LAMBRIGHT,

D. G. FOOTE, MINOR
LONGNION AND NITA LONGNION,

CHRIS N. MURPHY AND MARIA
A. MURPHY,

JUDY KAY BURRIS (POWER OF
ATTORNEY

FOR ARDLY J. CHOATE),
Appellants

 

                                                                V.

 

                ALLEN PAUL TRAHAN AND CHARLENE C. TRAHAN,

CHARLES M. CHAMBERS AND
LOIS J. CHAMBERS, Appellees

 

 

                                                                                                   

 

 

                                         On Appeal from the 1st Judicial District Court

                                                      San
Augustine County, Texas

                                                       Trial Court
No. CV-08-8968

 

                                                                                     
             

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

I.          BACKGROUND AND
PROCEDURAL HISTORY

            J. D. Stanley and
wife, Inez D. Stanley, were the owners of a certain tract of land in San
Augustine County, Texas, located on the shores of Sam Rayburn Reservoir.[1]  

            By
two deeds (each dated March 1, 1976), the Stanleys made conveyances from their
tract.

            In
the first of these deeds, the Stanleys conveyed Marvin C. Goates and wife, Etta
Lou Talbert Goates, and “the General Public” four contiguous easements for the
purpose of “the free and uninterrupted use, liberty, privilege and easement of
passing in and along certain roads and ways.”  These easements were described in this deed by
metes and bounds in separate descriptions as Road No. 1, Road No. 2, Road No.
3, and Road No. 4.  The deed went further
to recite that there was conveyed “free ingress, egress, regress to and for the
said MARVIN C. GOATES and wife, ETTA LOU TALBERT GOATES, their heirs and
assigns and the GENERAL PUBLIC, as may be necessary or convenient at all times
and seasons . . . in common with us.” Except for Road No. 3, each of the
descriptions called for road easements which were forty feet in width; Road No. 3
was described as being only twenty feet wide.  The western terminus of Road No. 1 was a
public roadway; it crossed the tract owned by the Stanleys in an
easterly/westerly direction and terminated at the Sam Rayburn Reservoir.  The other described Roads connected to Road
No. 1 (Road No. 1 providing the sole access to the public roadway system), Road
No. 2 projecting north from it, and Road No. 3 and No. 4 projecting south from
it.  Reference to this deed hereafter is
sometimes called the “express grant.”

            The
second deed was from the Stanleys to the Goateses of two parcels of land, the
conveyance being made “specifically subject to the right-of-way and road
easements” described in the express grant. 
The tracts conveyed to the Goateses did not abut any public roadway and
the access to the tracts conveyed to them from the public road system was
dependent on the easements conveyed by the express grant. 

            According
to the plat shown as Plaintiff’s Exhibit No. 11, at the time the controversy
arose, all of the parties to the lawsuit were the sole owners of parcels carved
from the tract originally owned by the Stanleys at the time of the two
conveyances mentioned above.  Allen Paul Trahan
and wife, Charlene C. Trahan, and Charles M. Chambers and wife, Lois J. Chambers,
became the owners of most of the property which was crossed by Road No. 1 and
Road No. 4; Road No. 2 branched off northerly from Road No. 1 and was
surrounded on both sides by and terminated on property belonging to the
Chamberses.  Ardly J. Choate[2]
became the successor in title to the Goateses as to the tracts described in the
second deed above and to another smaller tract contiguous to it.  Lloyd Lambright and wife, Elaine Lambright, D.
G. Foote, Minor Longnion and wife, Nita Longnion, and Chris N. Murphy and wife,
Maria A. Murphy, became the owners of the remaining parcels of land which had
been carved from the residue of the original Stanley tract; each of these
parcels abutted (or were crossed by) Road No. 3.

            In
1995, the Trahans, the Chamberses, the Stanleys, and Bennie Joe Whitten and
wife, Frances Whitten, executed an instrument entitled “Disclaimer of Easement
Rights” in which all rights of way or easements over and across a portion of a
7.90-acre tract owned by the Trahans (this tract being a portion of the
property subjected to the Road No. 1 and Road No. 4 easements created in the
instrument mentioned above) were disavowed and quitclaimed.  However, this disclaimer specifically excluded
any impact on the four roadways described in the express grant.  There is nothing in the evidence to reflect
what interest each of these parties had in claims to the property as of the
date of the signing of this instrument.

            Hereafter,
the Trahans and the Chamberses are referred to jointly simply as “the Trahans”
and the other owners of tracts carved from the original Stanley tract are
referred to collectively as “the Lambrights.”

            The
Trahans became convinced that the public held no valid claim to any of the
roads mentioned in the express grant except for the portions thereof which had
actually been used as roadbeds. 
Apparently based upon this conviction, they fenced all of Road No. 4 and
all portions of Road No. 1 which were not actually consumed by roadbeds (this
being determined by them to be a twenty-foot-wide thoroughfare).

            After
the Trahans erected fences along, and on parts of, Road No. 1 which restricted
the width of the roadway to no more than the actual roadbed (about twenty feet)
and erected gates that allegedly blocked access to one or more of the other
roads, the Lambrights filed a suit for declaratory judgment in which they
sought a judicial declaration that Road Nos. 1, 2, 3, and 4 were valid easements
for the benefit of themselves and the general public which, among other things,
could not be gated or blocked.  This
petition also specifically requested a determination that the “Disclaimer of
Easement Rights” executed in 1995 did not have the effect of depriving them or
the public of easement rights.

            The
Trahans filed a general denial and a counterclaim for declaratory
judgment.  In their counterclaim, the
Trahans sought a judicial declaration determining:  (1) that none of the four roads are public
roads; (2) that because the Lambrights and their predecessors in title had used
only a twenty-foot-wide portion of Road No. 1, the portion not actually used
for roadway purposes had been abandoned; and (3) that Road No. 2 and a part of
Road No. 1 had been abandoned.  

            No
request for a jury having been made, the matter was submitted to the trial court
as to both the facts and the law. 
Although no surveyor was ever called to testify, at the hearing, both
parties relied heavily on a plat prepared by William Mark Birdwell, a
registered professional land surveyor. 
This plat (Plaintiff’s Exhibit No. 11) showed the boundaries of lands
belonging to each of the parties to the lawsuit and the boundaries of each of
the four roads as called for in the express grant, together with the location
of actual roadbeds as they were then in use. 
The Lambrights conceded that Road No. 2 (lying solely within the
boundaries of property owned by the Chamberses) was not a public roadway and
should be considered neither a public nor a private easement. 

            After
a hearing on the merits, the trial court issued findings of fact and
conclusions of law.  Applying a strict
reading, some of these findings of fact could appear to contradict themselves
or be incongruous.  Finding number 6 recites
that there is no evidence that the parties or the public used the roads
referred to in the express grant. 
However, finding number 7 finds that a dirt road shown on the plat in
green (indicating the roadbed in use) existed at the time the express grant was
made and has been in continuous use by the parties to the lawsuit and their
predecessors in title.  Although the
roadbeds in use generally follow those described in the express grant, they
diverge from them in places.  One could
easily presume from finding number 6 that the trial court intended to find that
there has been no use of any part of the roadways described in the express
grant, a fact that is contradicted by the evidence and by finding number 7
(regarding use by the parties and their predecessors in title, but not by the
public as a public road).  

            A
court of appeals is under a duty to harmonize findings whenever possible so as
to avoid contradictory conclusions.  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Luna v. S. Pac. Transp. Co., 724 S.W.2d 383, 384 (Tex. 1987).  Therefore, we construe that finding number 6
of the findings of fact was intended to mean that neither the public nor the
parties or their successors in title used the easements described in the
express grant solely and entirely as they were described by metes and bounds;
rather, there was a continuous use of roadways which generally followed the
path as described by metes and bounds in the express grant, but also diverged
somewhat from those described roads. 

            The
final judgment of the trial court (which, in the absence of any metes and
bounds descriptions, in essence, incorporated Plaintiff’s Exhibit No. 11 by
reference) makes a number of determinations:

            (a)        That none of the roadways at issue were
dedicated to public use. 

            (b)        That Road No. 1 and Road No. 3 are
easements for the use and benefit of all parties to the suit, and not for the
exclusive use of any party.  The Trahans were
ordered to remove all fences and gates erected by them from any part of those
easements. 

            (c)        That there is no easement for the
benefit of any person existing as to Road No. 2.

            (d)       That Road No. 4 (which provides access
from the north line of the tract owned by Choate to Road No. 1) is a private
easement for the use and benefit of the owner of the Choate property.  The Trahans were ordered to remove the gate
which blocked Road No. 4, but were permitted to construct another gate at the
terminus of Road No. 4 with the north line of the Choate property so long as
Choate was given the right to travel through the gate.[3]  

            (e)        The descriptions of the easements shown
as Road No. 1 and Road No. 4 were amended to more closely conform to the use on
the ground. 

            On
appeal, the Lambrights contend that the trial court erred in refusing to find
the three of the roadways at issue to be public roads (acquiescing in the
finding that Road No. 2 was not a public roadway).  The Trahans filed a cross-appeal, alleging
nine points of error, which are grouped as follows:  (1) the trial court erred in finding, both in
the final judgment and in conclusion of law number 8[4]
(i.e., that Road No. 1 was declared to be forty feet wide); (2) the trial court
erred in finding that the portion of Road No. 1, which is situated east of the
intersection of Road No. 1 and Road No. 3 has been used by the parties; (3)
there is no evidence to support the trial court’s finding that Choate and his
family have, “over the years,” used Road No. 4 for access to their property
from Road No. 1, and such finding is against the great weight and preponderance
of the evidence; (4) there is no evidence to support the court’s finding that
the roadway used by Choate and his family has a width of forty feet, and such
finding is against the great weight and preponderance of the evidence; (5)
there is no evidence to support the trial court’s conclusion of law[5]
purporting to recognize a forty-foot easement to the Choate property along Road
No. 4; and (6) the trial court erred in ordering Trahan to move gates and
fences which deny access to the Choate property via Road No. 4.[6]  Significantly, neither of the parties
challenged the authority of the trial court to relocate the roads described in
the express grant to more closely conform with the location of the roadbeds on
the ground. 

            For
all practical purposes, the trial court determined that all of the easements
set out in the express grant (except for Road No. 2) were (and remained)
private easements for the use and benefit of all of the litigants, their heirs
and assigns, but, because there had been no acceptance of a dedication by the
public, these were not public roads.  The
trial court further concluded that with the exception of Road No. 4, the
easements as determined could not be blocked by any gate and enjoined their
blockage. 

II.        ANALYSIS

            A.        Are the Roadways in Question Public
Roads?

            The
trial court concluded that “[t]he roadways described in the conveyance are not
road easements dedicated to use by the public.” 
In their sole point of error, the Lambrights contend that the trial
court erred in so concluding.  The
relevant issue is whether a dedication of the roads to public use was fully
accomplished; the resolution of this issue rests on the existence of the facts
underlying this conclusion.  In arriving
at this conclusion, the trial court found that “[t]here is no evidence that the
parties or the public accepted the roads referred to in the conveyance.”  See
Viscardi v. Pajestka, 576 S.W.2d 16, 19 (Tex. 1978) (whether public right
of way has been acquired by dedication is generally question of fact).  

            Findings
of fact entered in a case tried to the bench “are of the same force and dignity
as a jury’s answers to jury questions.” 
.39 Acres v. State, 247 S.W.3d
384, 387 (Tex. App.—Texarkana 2008, pet. denied) (citing Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991)).  We review the findings of fact
by the same standards that are applied in reviewing the legal or factual
sufficiency of the evidence supporting a jury’s answer to a jury question.  Id.
(citing Ortiz v. Jones, 917 S.W.2d
770, 772 (Tex. 1996); Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994)).

            The
test for legal sufficiency is “whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We will credit evidence favorable to the
finding of the court if a reasonable judge acting as a fact-finder could, and
will disregard contrary evidence unless a reasonable judge could not when
making this determination.  Id.; Ramsay
v. Tex. Trading Co., 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet.
denied).  As long as the evidence falls
within the zone of reasonable disagreement, we will not substitute our judgment
for the judgment of the trial court.  Ramsay, 254 S.W.3d at 625 (citing Wilson, 168 S.W.3d at 822).  In this case, the court is the sole judge of
the credibility of the witnesses and weight given to their testimony.  Id.
(citing Wilson, 168 S.W.3d at
819).  Although we consider the evidence
in a light most favorable to the challenged findings, indulging every
reasonable inference that supports them, we may not disregard evidence that
allows only one inference.  Id.

            When
considering a factual sufficiency challenge to a jury’s verdict, we must
consider and weigh all of the evidence, not just that evidence which supports
the trial court’s judgment.  Id. 
We will set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence that it is clearly wrong and unjust.  Mar.
Overseas Corp. v. Ellis, 971
S.W.2d 402, 406–07 (Tex. 1998).  Because
we are not a fact-finder, we will not pass on the witnesses’ credibility or
substitute our judgment for the judge’s, even if the evidence would clearly
support a different result.  Id. at 407.

            We
find it helpful to clarify the description of the four roads at issue.  The plat depicting these roads (Plaintiff’s
Exhibit No. 11) shows a “green road” and a “red road” (these being called by
those names because the drafter of the plat used green ink to portray the road
location of the roadbeds in existence and red ink to portray the location of
the four roads described by metes and bounds in the express grant).  For the most part, the green road falls within
the boundaries of the red road on the plat. 


            The
road leading into the property from Old Farm to Market Road 705 is depicted on
the plat as “Road No. 1.”  As shown in
red, this road (as described in the express grant) has a width of forty
feet.  Much of the area contained in the
easements shown in red are overgrown and have not been cleared of trees and
underbrush.  As shown drawn in green
(i.e., as it currently exists on the ground), Road No. 1 appears to be a narrow
road.[7]  The Trahans fenced portions of Road No. 1
and, as a result, this road was, in some places, narrowed even more than the
previously-established roadbeds.  

            The
Lambrights stipulated at trial that Road No. 2 is not a public road and made no
claim to easement rights upon it.

            Road
No. 3, as depicted in both red and green, is twenty feet in width.  This dirt road provides access to the
property owners whose tracts abut the Sam Rayburn Reservoir.  The location of this road as called for in the
express grant differs from the use of the road as reflected on the plat; the
actual use parallels the called location, but is situated east of and abutting
the location described in the express grant. 

            Road
No. 4 is depicted only as a “red road” in the plat.  However, this short road segment leading from
Road No. 1 to the Choate property was found by the court to have been used for
the past thirty years.  As depicted on
the plat, Road No. 4 as described in the express grant is forty feet wide.  The Trahans installed a gate across this
road, thus denying the Choates access to their property along Road No. 4.  The Trahans also placed a fence approximately
one foot in front of the Choates’ chicken house.  At the time of trial, although the east line
of the Choate property abuts Road No. 3 (thereby providing access to the Choate
property from that direction), there was no access to the north line of the
Choate property by using Road No. 4 because that had been blocked by the
Trahans’ fence.  

            Finally,
the eastern end of Road No. 1, lying east of its intersection with Road No. 3
(depicted only as a “red road” on the plat), provides access to the Sam Rayburn
Reservoir.  The Trahans installed a gate
across this section of the road.    

            The
Lambrights contend that because the evidence established that the roadways in
question[8]
were subject to an express dedication to the “general public” in the express
grant and because the roadways were accepted and used by the public, the trial
court erred in concluding that Road No. 1, Road No. 3, and Road No. 4 were only
private road easements rather than public roads.[9]  

            Dedication
of a roadway may occur as a result of either an express grant or dedication or
by implication.  Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass’n, 77
S.W.3d 487, 503 (Tex. App.––Texarkana 2002, pet. denied); Gutierrez v. County of Zapata, 951 S.W.2d 831, 837–38 (Tex. App.––San
Antonio 1997, no writ).  Generally, an
express dedication is accomplished by deed or written instrument.  Broussard
v. Jablecki, 792 S.W.2d 535, 537 (Tex. App.––Houston [1st Dist.] 1990, no
writ).  The case at bar involves just
such an express dedication, as evidenced by the conveyance of the right of
passage on and across four roadways; under the terms of the express grant, this
right was not given solely to the grantees in the instrument, but also to the
general public.  

            The
question before us is not, therefore, whether a dedication of the roadways in
question was tendered by the express grant but, rather, whether there was an
acceptance by the public of that tender. 
In order to complete the creation of a public easement by an express
dedication of property, as here, there must be acceptance of the dedication by or
on behalf of the public.  See Maddox v. Maxwell, 369 S.W.2d 343,
347 (Tex. 1963); Gutierrez, 951
S.W.2d at 838.  In the seminal case of Viscardi, the Texas Supreme Court noted
that the courts of this State do not require a formal or express acceptance of
a dedication by the public; rather, “[a]n implied acceptance by the public is
sufficient.”  Viscardi, 576 S.W.2d at 19. 
That is, by general and customary use, the public can accept a
dedication.  Id.

            It
is undisputed that San Augustine County has never provided any maintenance for
any part of any of the roadways at issue. 
Rather, the property owners who use the roads have maintained those
roads.  Trahan testified that San Augustine
County never recognized or accepted these roads as public easements and there
was no proffer of any evidence of a formal acceptance of the dedication by the
San Augustine County Commissioners’ Court. 
Judy Kay Burris (daughter of and attorney in fact for Choate) testified
that the “general public” used the road that comes off of Old Farm to Market
Road 705[10]
and that the use of Road No. 1 is not limited solely to people who own the
property serviced by the road.  Foote
testified that there has been “a lot of traffic” coming in on Road No. 1.  Lambright testified that the “general public”
uses Road No. 3 as well.[11]
Road No. 3 has been used by census takers, ambulance drivers, and police.  (One observes from the plat that in order for
such persons to use Road No. 3, they must first travel Road No. 1 to get to
it.)  Further, Lambright has “seen people”
using the road that goes to the Choates’ property.[12] 

            The
courts of this State have held for a very long time that the acceptance by the
public need not be express; rather, an implied acceptance by the public is
sufficient.  Gilder v. City of Brenham, 67 Tex. 345, 3 S.W. 309 (1887).  Public roadways can be created by both
express and implied dedication of the land to public use.  Jezek v.
City of Midland, 605 S.W.2d 544, 548–49 (Tex. 1980).  The evidence here in support of the proposition
that these roadways have been accepted by the public is generally limited to
rather vague testimony that they are used by the “general public,” including
census takers, ambulance drivers, and police. 
In fact, Road No. 1 is marked with a “private road” sign at its western
terminus (i.e., its entrance from the public roadway system).  The formal acceptance of the dedication of a
roadway by a governmental entity is relatively easy to determine because it is
done by action of that governmental entity and monumented by such things as
minutes of meetings.  Acceptance by
public use has no such bright line determinative act.  The required use of a roadway by the public
need not be for any specific length of time and a short period of use generally
is sufficient, so long as the use continues for such a period that it may be
inferred that the public desires to accept in perpetuity the offer of use.  See Stein v. Killough, 53 S.W.3d 36, 42 n.2
(Tex. App.––San Antonio 2001, no pet.); Schwertner
v. Jones, 456 S.W.2d 956, 959 (Tex. Civ. App.––Austin 1970, no writ); City of Dallas v. Schawe, 12 S.W.2d
1074, 1076 (Tex. Civ. App.––San Antonio 1928, writ dism’d).  

            One
notes that the use of a roadway by law enforcement officers, ambulance drivers,
and census takers is not conclusive as to the intent of those members of the
public to accept a dedication of a roadway as a public roadway.  In similar fashion, such officials might use
a hallway in an apartment building for access to an apartment within it without
any thought that the hallways have been dedicated to public use.  The trier of fact must infer the intent of
the members of the public from its actions. 
Apparently, the trial court here did not infer that the public’s use of
these roads in these circumstances as described by the evidence sufficiently
showed the intention of the public to accept them as public roads.  Given the paucity of evidence on the issue of
public acceptance and the fact that the burden to prove their acceptance lay
with the proponents, we believe a “reasonable and fair-minded” fact-finder
could conclude that the proof of acceptance of the roadways by public use
failed to meet the required burden.  See Wilson, 168 S.W.3d at 827. We
further conclude that the judgment is not so contrary to the overwhelming
weight of the evidence that it is clearly wrong and unjust.  Ramsay,
254 S.W.3d at 625.  

            We
overrule this point of error.  

B.        The
Trial Court Did Not Err in Finding the Width of Road No. 1 and Road No. 4 to Each
be Forty Feet or in No Finding of Abandonment.

 

            On
cross-appeal, a great portion of the complaints raised by the Trahans center
upon the actual usage of the roadways contained in the express conveyance.  They dispute the finding of the trial court
that the width of Road No. 1 and Road No. 4 to be forty feet, contend that
there has been no use of the portion of Road No. 1 which extends easterly from
the intersection of Road No. 1 and Road No. 3 to Sam Rayburn Reservoir,
and maintain that the court’s finding that the Choate family has used Road No.
4 “over the years” is not supported by the evidence.  Apparently, these arguments are intended to
buttress their contention that by using only a part of the easements and not
their full length and width, the proponents of the easements have effectively
abandoned the portions not used.  However,
it has long been a 

universally recognized rule that, while
abandonment may be established, like any other fact, by circumstances, yet
those circumstances must disclose some definite act showing an intention to
abandon and terminate the right possessed by the easement owner.  The material question is the intention to
abandon, and that intention must be established by clear and satisfactory
evidence.  Mere nonuser of an easement
will not extinguish it. 

 

Dallas County v. Miller, 140 Tex. 242, 245, 166 S.W.2d 922, 924–25 (1942).  The intent to abandon an easement “must be
established by clear and satisfactory evidence.”  Milligan
v. Niebuhr, 990 S.W.2d 823, 826 (Tex. App.––Austin 1999, no pet.).  As with any other affirmative plea, the
burden of showing abandonment of the rights in the easement rested on the
Trahans.  Other than showing that the
actual roadbed on Road No. 1 was only some twenty feet in width and that a
portion of Road No. 1 had not been cleared at all, they provided no evidence of
an intent to abandon any part of any of the roads described in the express
grant.  As a practical matter, there is
ample evidence of use of at least parts of each of Road Nos. 1, 3, and 4 to
sustain the judgment of the trial court. 

            Further,
“[i]t is well settled that the rules which control the courts in the
construction of easements are, in general, the same as those applied to the
construction of deeds and other written instruments.”  Stephenson
v. Vastar Res., Inc., 89 S.W.3d
790, 792 (Tex. App.––Corpus Christi 2002, pet. denied); Knox v. Pioneer Natural Gas Co., 321 S.W.2d 596, 602 (Tex. Civ.
App.––El Paso 1959, writ ref’d n.r.e.). 
The express grant described the width and breadth of the easements upon
which the Lambrights relied and the Lambrights used at least a portion of each
of Road Nos. 1, 3, and 4 as access to their respective tracts without
interruption (until the Trahans fenced off Road No. 4 in its entirety).  Accordingly, they were in possession of the
easement rights conveyed under the express grant.  A person in possession of a portion of lands
conveyed to him is considered in law to have had constructive possession of all
the land embraced within the description of his property as described in the
registered deed under which he claims, although he was in actual possession of
only a part of the lot described.  Hunt Oil Co. v. Moore, 656 S.W.2d 634,
641 (Tex. App.––Tyler 1983, writ ref’d n.r.e.); Love v. McGee, 378 S.W.2d 96, 98 (Tex. Civ. App.––Texarkana 1964, writ
ref’d n.r.e.).  Under the constructive
possession doctrine, therefore, the Lambrights remained in possession of every
part of all of the four roads described in the express grant. 

            On
appeal, a trial court’s conclusions of law are reviewed de novo and will be
reversed only if they are erroneous as a matter of law.  Villagomez
v. Rockwood Specialties, Inc., 210 S.W.3d 720, 727–28 (Tex. App.––Corpus
Christi 2006, pet. denied).  We will
uphold the trial court’s conclusions upon any legal theory supported by the
evidence.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002).  Those conclusions cannot be
challenged for factual insufficiency; however, we may review the trial court’s
legal conclusions drawn from the facts to determine their correctness.  See id.

            The
Trahans claim that all of the evidence showed the roads used since 1976 have
never been wider than twenty feet.  Even
if that is true, it is not determinative of the issue here.  The portion of the granted easement which was
actually put to use does not dictate the width of the easement; the granted
easement does.

            We
overrule this cross-point of error.

            C.        The
Trial Court Appropriately Ordered the Removal of Gates.

            The
Trahans complain that there is no evidence to support a finding or ruling that
they are required to remove gates and fences from any of the easements which
were found to exist on any of the roadways. 


            In
so doing, the Trahans continue to ignore the express grant which was the
genesis of the rights upon which the Lambrights rely.  That conveyance specifically conveys the
grantees “the free and uninterrupted use, liberty, privilege and easement of
passing along” the roads described therein as Road Nos. 1, 2, 3, and 4.  (Note that the Lambrights did not contest the
Trahans’ contention that there was no easement over Road No. 2 and the trial
court found none.)  When traveling on the
roads, a gate is an interruption which hinders the free passage along those roads.  There is no merit in the claim that this
prohibition against gates finds no basis in the evidence.

            We
overrule this point of error.

            D.        Another Means of Access for Choate Does
Not Negate Express Grant. 

            The Trahans further argue that since
there is access to the Choate property via Road No. 3, the court should not
have determined that they should also have access via Road No. 4, contending
further that Road No. 4 was now seldom, if ever, used.

            In
order to establish an implied easement by necessity, a party must establish (1)
unity of ownership of the dominant and servient estates prior to severance, (2)
the necessity of a roadway, and (3) that the necessity existed at the time the
estates were severed.  Daniel v. Fox, 917 S.W.2d 106, 111 (Tex.
App.––San Antonio 1996, writ denied). 
The way of necessity must be more than one of convenience; in other
words, if the owner of the land can use another way, he cannot claim by
implication to pass over land of another to get to his own.  Duff v.
Matthews, 158 Tex. 333, 311 S.W.2d 637, 640 (1958).

            This
doctrine of implied easement by necessity must have been the guiding star for
the pleading that Road No. 4 should be dissolved because the Choate property
abuts another roadway.  However, it is
not a valid argument because the easement rights belonging to Choate do not
arise by way of necessity but, rather, by the express grant.  The two means of access to the Choate
property existed when the Choate property was carved from the same tract now
owned by the Trahans.  The existence of
another means of access to the Choate property and the frequency of the use of
Road No. 4 as access to the Choate property are just simply not relevant to the
findings and orders made by the trial court pertaining to Road No. 4.  We do not reiterate the previous discussion
of abandonment of the easement.

            We
overrule these points of error.

III.       CONCLUSION

            We
affirm the judgment of the trial court.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          August 2, 2010

Date Decided:             September 2, 2010

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001 (Vernon
2005).  We are unaware of any conflict
between precedent of the Twelfth Court of Appeals and that of this Court on any
relevant issue.  See Tex. R. App. P. 41.3.

 





[2]After
this appeal was perfected, a suggestion of the death of Ardly J. Choate was
received by this Court with a request that the case proceed with Judy K.
Burris, Independent Executrix of the Estate of Ardly Joseph Choate, deceased,
substituted in his stead.  Pursuant to
Rule 7.1(a)(1), Texas Rules of Appellate Procedure, this case will continue to
proceed in the name of Ardly J. Choate.  Tex. R. App. P. 7.1(a)(1). 





[3]As
noted previously, the judgment contains no descriptions of any of the road
easements other than by reference to Plaintiff’s Exhibit No. 11. 





[4]Conclusion
of law number 8 states that “[t]he dirt road purporting to be Road No. 1 on
Plaintiff’s Exhibit 8 is declared to be 40’ in width with the northern boundary
of said road to coincide with the northern boundary of the ‘green road’ and to
extend southerly for a uniform width of twenty feet (40’) [sic].”

 





[5]Conclusion
of law number 10 states that “[t]he roadway easement to the Ardley [sic] J.
Choate property, purporting to be Road No. 4 on the conveyance, is recognized
as a roadway easement and shall be forty feet (40’) in width centered on the
center line of the most northerly chicken house on the Choate property as shown
on Plaintiff’s Exhibit No. 11.”

 





[6]Conclusion
of law number 13 states that “Defendants should be ordered to remove, at their
sole expense, the gate and fence which restricts the access of Ardly J. Choate
and his family to their property by passage on what has been identified in the
conveyance as Road No. 4.”

  





[7]The
record does not clearly state the width of this road.  The plat indicates that Road No. 1 (green
version) is not forty feet wide. 
However, Trahan indicated that he intended to narrow the easement to
twenty feet.  In some areas, the fences
were placed four to five feet into the existing road.  





[8]The
Lambrights stipulated at trial that there was no evidence of use by the public
of Road No. 2.  Therefore, the Lambrights
contend on appeal that only Road No. 1, Road No. 3, and Road No. 4 were public
roads.  

 





[9]No
party contends that Road No. 2 is a public road.





[10]Described
as “Road No. 1” on the plat of the subject property.  

 





[11]Described
as “Road No. 3” on the plat of the subject property.  

 





[12]Described
as “Road No. 4” on the plat of the subject property.