## JOHN ATKINSON v. JOHN G. BELL.

We have held in various cases, in effect, that prior to the Law of the 26th of March, 1834, sales made by colonists or settlers, of their headrights, before the lapse of six years from the date of the title, were void ; and we have also held that after the Law of the 26th of March, 1834, up to the date of the Constitution of the Republic, sales of lands by settlers, and agreements for the sale of their lands, made before the final titles were issued to them, were nullities.

In this case, the sale to Thomas Bell, of the 15th of March, 1835, was of vacant land, (to which he afterwards acquired title ;) but it cannot be placed on a more favorable footing than if the land had been held by Babbitt (the vendor) under an order of survey or an amparo. If it had been so held, the sale would have been void, having been made before the issue of the final title.

There may be equities, such as taking possession, &c., arising subsequent to the sale, which would sustain the claim of the purchaser, against the title of the vendor, and these have been commented on in Hunt v. Turner, 9 Tex. R. 385, and Burleson v. Burleson, 11 Id. 2.

A dedication of real property to the Methodist Society for church purposes, is valid, although such dedication be by parol, and said Society be not incorporated. The property had been used in pursuance of the dedication for more than ten years.

Appeal from Austin. Tried below before the Hon. James H. Bell.

Trespass to try title to ten acres of land, by appellee against

appellant. The plaintiff gave in evidence an instrument of writing, as follows : Know all men, by these presents, that I, Benjamin Babbit, have bargained and sold to Thomas Bell ten acres of land at the north-east corner of my three-quarters of a league, including the spring, which land I do warrant and defend to said Bell and his heirs forever. I, the said Babbitt, have received value to my satisfaction, this March 15th, 1835. We are to be equal in the transfer ; the transfer is to be made as soon as may be convenient.

BENJAMIN BABBITT.

Also a title to said Babbitt for three-quarters of a league, including the land in controversy, extended October 3rd, 1835 ; and deed from Thomas Bell to plaintiff, dated August 23rd, 1855. Thomas Bell, plaintiff's grantor, called as a witness by plaintiff, testified as follows :

That he purchased the ten acres in controversy, in March, 1835, from Benjamin Babbitt, and then paid him for it with a cart ; that Babbitt executed to him the bond, already given in evidence ; that he had the land surveyed ; that he extended his field fence over a part of it in 1835 or 1836, does not remember which year ; that at the time of the purchase he resided near the tract, say less than fifty yards ; that he cultivated the part inclosed until he moved away in 1840 ; that Babbitt did not make him a title to the land ; that the revolution came on and he did not wish any made ; that Babbitt left the country in March, 1836, and has not returned. He states that he gave the lot of ten acres to the Methodist Society, in 1842, or 1843, or rather told them that, if they would build a meeting house on it, he would give them the land ; that they built the meeting house there in 1843 or 1844, as he proposed, and it was, and has ever since, been used by the said society for the purposes of their church, and sometimes schools have been taught in it ; that he told the society that they might have the land aforesaid, and that he would make a deed for it to them at any time they desired it to be made ; that

they built a house, as aforesaid, in 1843 or 1844, and have used it ever since as such, with his consent and approbation ; that he had told the plaintiff all about how he had acquired the land, and about giving it to the Methodist Society here, before he made the deed to him, plaintiff ; he was fully informed of all the facts ; that he moved off the fence that was on the land in 1842, or 1843, and has never claimed the land as his since, and has not paid tax on the land since that time. The house built by the Methodist Society was removed from the premises some four or five years afterwards, it being in a state of decay. Another meeting house was built, he thinks, and has been used by them since.

There was other parol evidence to the same effect. It appeared, also, from the testimony, that the appellant claimed the balance of, the Babbitt tract, and that he took a prominent part as a member of the Methodist Church in the building of the houses, &c., conducting meetings there, and superintending the schools.

The Court instructed the jury, without request, that Babbitt had a right in 1835, to sell the land in controversy to Bell, the Mexican laws prohibiting the alienation of land having been before that time repealed ; and that under the laws then in force, and from that time until 1840, a parol or verbal sale of land, accompanied by delivery of possession to the purchaser, and payment of the price, was as valid as if a deed had been executed in due form of law.

The following instructions were asked by the defendant, and refused :

1st. That the sale of land by Babbitt to Bell, if made before the issuance of the grant, 3rd October, 1835, was a nullity.

2d. That the possession of the premises by Bell from 1835 to 1843, is not sufficient to give title to, or to raise a presumption of a legal sale.

3d. That, if they believe that Thomas. Bell dedicated the land to the Methodist Society, and that they took possession

thereof and used it, then the plaintiff has no right to recover in this suit.

4th. That a verbal dedication of land to the use of a Church or religious society may be made and it need not be made in writing.

5th. The non-claim of the land by Thomas Bell from 1842 or 1843, until he deeded it to the plaintiff in 1855, and the use thereof by the Methodist Society in the meantime, with the approbation of said Bell, are evidence to show a dedication of the same by said Bell.

6th. When an absolute dedication is made to a religious society, the donor has no right to retake the premises.

The defendant had pleaded a general denial, title in himself, and the Statute of Limitations ; and the Judge may have refused the instructions asked, on the ground that the defences therein referred to, had not been relied on in the answer.

Verdict and judgment for plaintiff.   Motion for new trial overruled, &c.


*G. W. Smith*, for appellant.

*N. Holland*, for appellee.


HEMPHILL CH. J.  This case presents some peculiar features.  One is, that at the time of the sale from Babbitt to Thomas Bell, under which the appellee, John G. Bell, now claims, viz : on March 15th, 1835, the land was entirely vacant.  There is not a tittle of evidence in the case, to show that Babbitt even claimed the land at that time, except that in his bond or agreement for title, the land is described as a portion of his three quarters of a league.   On the twenty-fourth of September following, Babbitt petitions for title to three quarters of a league, which we may presume embraces this ten acres sold by him in March previous.   On the twenty-fifth,

there is order of survey, and the title was issued on the third of the next month, viz: October, 1835.

The laws of Coahuila and Texas had not prohibited individuals from selling lands belonging to the public domain, on the presumption, we may suppose, that no such sale would be attempted. But where land had been severed and title issued to settlers, the sale by the Colonization Law of 24th March, 1825, Art. 27, was prohibited, until the land was entirely cultivated; which we held as equivalent to six years from the issue of the title; and under Decree 190, 28th April, 1832, settlers, whether Mexicans or foreigners, were forbidden to sell their lands until after six years from the time of taking possession, (Art. 19.) These prohibitions were modified by Art. 36 of Decree No. 272, 26th March, 1834, authorizing settlers, after they had received their titles to sell their lands. By the term " titles," under this last article, we are to understand what is designated and is known as the final title; not an *amparo*, or an order of survey, but such title, for instance, as Commissioners were authorized to issue under the instructions of the 4th September, 1827, and such title as was issued to Babbitt on the 3d of October, 1835.

We have held in various cases, in effect, that prior to the Law of the 26th March, 1833, sales made by colonists or settlers, of their headrights, before the lapse of six years from the date of the title, were void; (Hunt's Heirs v. Robinson's Heirs, 1 Tex. R. 748;) and we have also held that after the Law of the 26th March, 1834, up to the date of the Constitution of the Republic, sales of lands by settlers, and agreements for the sale of their land, made before the final titles were issued to them, were nullities. (Robbins' Heirs v. Robbins' Heirs, 3 Tex. R. 496; Spillers v. Clapp, 3 Id. 498; Emmons v. Oldham, 12 Id. 18.)

In this case, the sale to Thomas Bell, of the 15th March, 1835, was of vacant land; but it cannot be placed on a more favorable footing than if the land had been held by Babbitt

under an order of survey or an *amparo*. If it had been so held, the sale would have been void, having been made before the issue of the final title. The rule that where a vendor has not title and sells, any title aftewards procured by him will enure to the benefit of the purchaser, does not apply in cases where such sale was prohibited by law. Such favor, shown to a purchaser at a prohibited sale, would thwart and defeat the policy of the Government.

There may be equities, such as taking possession, &c., arising subsequent to the sale, which would sustain the claim of the purchaser, against the title of the vendor ; and these have been commented on in Hunt v. Turner, 9 Tex. R. 385, and Burleson v. Burleson, 11 Id. 2. And in this case there was a commencement of such equities, by the possession of a portion of the ten acres, for four or five years, by Thomas Bell ; and what effect might be given to these acts, as against Babbitt, were he to have attempted a recovery of the land from his vendee, need not be considered. But, under the facts in evidence, the title of the appellee is not such as will maintain the action against the defendant. The title from Babbitt to Thomas Bell is void. The possession of said Bell was not of such duration as to give him a good title by limitation.

The facts show, indeed, as we have said, that there was a commencement of equities in Thomas Bell, as against his vendor, Babbitt ; but this right, although it may have been strong as against Babbitt, was transferred to the Methodist Society in 1842 or 1843, and the land has, from that time to the present, been used by that society for church purposes. The house first built having gone to decay, another has been erected for the use of the Methodist Society. The gift was by parol, there being no deed ; but the donor, Thomas Bell, stated that he would make the deed whenever it was desired to be made. Nor was the Methodist Society, which worshipped at that church, incorporated ; but neither of these facts, viz : that the dedication was by parol, and that there was no grantee capable of

taking by grant, have the effect of defeating the donation. The rules of law in support of both of these positions will be found very fully and clearly expounded and decided in Beatty and Richie v. Kurtz, et al., 2 Peters, 566 and in the City of Cincinnati v. The Lessees of White, 6 Peters, 432. Had the donor, Thomas Bell, at the time of the dedication, held the legal title, he could not have recovered as against his grantees, nor against a third person, unless he was suing for and in behalf of the Church. Nor can he or his vendee, the appellee, recover on such title as he possessed at the time of the dedication or gift. Nor is it intended to be intimated that any one could hold as against the society. Whatever right Thomas Bell would have had, if he had continued to hold for the nineteen or twenty years which have elapsed from the issue of the title to Babbitt, is now in the society. The effect of such possession can scarcely be doubted, but it is not necessary to determine its weight in this case. It is very clear that on the evidence, the appellee was not entitled to recover, and the judgment is reversed and the cause remanded.

Reversed and remanded.