### S. PARISA V. CITY OF DALLAS.

#### No. 3282.

1. **Dedication of Street—Estoppel.**—The land in controversy is a strip 25 feet in width, and includes one-half of the extension of a street in the city of Dallas. It was 150 yards beyond the city limits.   The adjoining owner had dedicated for the street 25 feet.   Plaintiff bought the land in 1877.   The land then was inclosed. In 1884 the plaintiff rebuilt his fence, placing it 25 feet from his line.   The open space left a 50-feet street, which was used by the public, but not recognized by the county as a public road.   About the time of the removal of the fence plaintiff claimed of his warrantor compensation for the land occupied by the street, and full compensation was paid.   Subsequently the city limits were extended so as to include the land; the street was recognized and worked by the city.   *Held*, that the facts showed by estoppel a dedication by the plaintiff.

2. **Same.**—By the transaction between the plaintiff and his warrantor the plaintiff affirmed and his vendor admitted that there had been a dedication previous to the conveyance by the latter to the former.   Each is estopped to deny that fact as against the other. The city limits were extended and the city accepted the dedication if one existed. The dedication was for the benefit of the public, whose representative the city became when its limits were so extended as to include the property.   It would seem that in such a case for the protection of one who has paid for the street as already dedicated or to be dedicated to the public, the city ought to be permitted to assert the dedication.

3. **Cases Discussed.**—Atkinson v. Bell, 18 Texas, 474; Gilder v. City of Brenham, 67 Texas, 347; and Galveston v. Williams, 69 Texas, 449, discussed.

APPEAL from Dallas.   Tried below before Hon. R. E. BURKE. The opinion states the case.

*Word & Reeves*, for appellant.—1. To constitute an estoppel, the act or admission must be shown to have had a direct and immediate influence on the conduct of the party claiming its benefits, and only those to whom a representation is made or intended to influence and their privies may take advantage of the estoppel.   It is not claimed by appellee that it was influenced by or knew of the acts of appellant or his representation to Clark, his vendor; nor does it appear that any one else has been influenced by such acts and statement.   Scoby v. Sweatt, 28 Texas, 730; Blum v. Merchant, 58 Texas, 400; Edwards v. Dickson, 66 Texas, 613; Bynum v. Preston, 69 Texas, 287; Bridges v. Johnson, 69 Texas, 717.

2. The facts upon which the court bases its conclusion that appellant had dedicated the lot for a public street do not manifest that positive and unmistakable intention upon appellant's part to permanently abandon the lot for a public street which is a controlling and essential element to a dedication.   Wolf v. Brass, 72 Texas, 133; Ramthun v. Halfman, 58 Texas, 551; Harris County v. Taylor, 58 Texas, 690.

*A. P. Wozencraft* and *M. Trice*, for appellee.—1. It is sufficient to constitute a dedication if there be an unequivocal act or declaration of

the proprietor showing the intention of dedication, and that others have acted in reference to and upon the faith of such manifestation of intention.    Oswald v. Grenet, 22 Texas, 94; 2 Dill. Mun. Corp., sec. 628, et seq.

As to acceptance by the public:   2 Dill. Mun. Corp., sec. 642, and authorities cited.

2.    The appellate court will not disturb the judgment of a District Court when there is sufficient evidence to sustain the finding of the court.    Sayles' Civ. Stats., p. 675, rule 4, and authorities cited.

GAINES, ASSOCIATE JUSTICE.—This case has been submitted under an agreement entered into in accordance with rule 59 of the rules of this court.    The statement of the case as agreed upon is as follows:

"1.    The suit was instituted June 5, 1889.    The pleadings consisted of appellant's original petition and appellee's original answer.    The original petition was in the usual form of an action of trespass to try title.    The answer contained a plea of not guilty, a plea of ten years limitation, and a plea of long use by defendant as a street, and a plea of dedication for street purposes.    The cause was tried by the court without a jury, on April 16, 1891, and judgment was rendered for defendant.    On April —, 1891, plaintiff's motion for a new trial was overruled, and plaintiff thereupon in open court gave notice of appeal to the Supreme Court.

"2.    It is admitted that plaintiff has a regular chain of transfer from the State of Texas down to himself of the land in controversy, and is entitled to a recovery unless defeated by the matters herein contained.

"3.    The lot in controversy is situated in the city of Dallas, Texas, and is a part of the lot sold by general warranty deed to plaintiff by Clark, in the year 1877.    This lot at that time was 150 yards outside of the then corporate limits of the city.    It was 57 feet in width and fronted on Juliette Street, and 165 feet in depth, parallel with and lying on an extension of Boll Street.    This Boll Street extended 50 feet wide from a point at the corporation line of the city of Dallas, where it connected with a street of the same width and of that name to the end of the land in controversy, and a strip of land 25 feet in width had been dedicated by the adjoining landowner as a street on the side of and adjacent to said lot its full length, as an extension of said street. If Boll Street were extended in a direct line its uniform width it would embrace the lot in controversy.    At the time of plaintiff's purchase from Clark all of his lot was under fence, except a strip extending the full length of his lot lying next to the said extension of Boll Street. The lot in controversy is a strip of land 25 feet wide, lying in what is now used as Boll Street.

"4.    In 1884 the fence had rotted down, and plaintiff took up the posts of the fence that were still standing and built a new fence further

back on his lot, and the tract in controversy is a strip of said lot, 25 feet in width, the full length of said lot, lying next to and adjoining said Boll Street. This strip was not inclosed by the new fence, and has ever since been traveled by the public, and in connection with Boll Street has been used by the public for the purpose of travel. Plaintiff knew of its use by the public, and never objected to it. It was never claimed by the county or worked by it, nor by any one else, nor was it ever claimed or worked by the city, except as hereinafter shown.

"5. A short time before the institution of this suit, in 1888, the corporate limits of the city were extended and plaintiff's lot was taken in the city limits. Defendant soon after commenced plowing up the street, and plaintiff endeavored to stop the city's workmen, but could not succeed, and the city continued to work the same, and has graded it, and it has ever since been used as a part of Boll Street by the public. Plaintiff then applied to the city to have the work stopped, but the city council declined to do so. Plaintiff then brought this suit.

"6. In addition to the above admitted facts the court found, that in 1884 plaintiff represented to Clark, his vendor, that the lot in controversy was a part of Boll Street at the time Clark sold to him, and that plaintiff demanded and received in the same year, 1884, from said Clark, full payment for said lot.

"7. The court held, that plaintiff having in 1884 removed the old fence from the lot in controversy, and having built a new fence about the line of the street, excluded from his inclosure the lot in controversy; and having permitted the public to travel over the same as a street without objection, and having accepted pay from his vendor for said lot, on his (plaintiff's) representation that it was in the street, plaintiff was thereby estopped from asserting ownership in said lot, and was held conclusively to have dedicated the same for a public street.

"8. Plaintiff contends that the court's finding with reference to his receiving pay from Clark, his vendor, for the lot in controversy, as contained in section 7, above, is against the evidence, and that the evidence showed that plaintiff did not dedicate or give the lot in controversy for a street. The only evidence on this issue, except that which is above admitted, is the testimony of plaintiff and of Clark, plaintiff's vendor, which is as follows, viz.:

"Clark testified: 'That in the year 1884 plaintiff told him that the lot in controversy in this suit was in Boll Street at the time he, Clark, had sold to plaintiff, as above stated, and demanded payment of the same, declaring that unless he was paid he would sue Clark on his warranty; that he and plaintiff then had a settlement for some work that plaintiff had done for him, and that in said settlement he allowed plaintiff full payment for the lot in controversy, and that he paid for same on plaintiff's representations that the said lot was in Boll Street at the time of Clark's conveyance to him as aforesaid; that he had never

dedicated or given any of said lot for a street, and that no part of the street was embraced in his deed to plaintiff; that shortly after plaintiff brought this suit he came to Clark and told him of having brought the suit, and said to Clark that if he would not tell about having paid plaintiff for the land, that he (plaintiff) would make it to Clark's interest.'

"Plaintiff testified: 'That he did have a settlement with Clark at the time spoken of by him; that said settlement was an adjustment and compromise of a claim he had against Clark for work done, and nothing was said about the lot in controversy being in the street, nor did the failure of Clark's warranty to the lot enter into the settlement; that he did not know that any one had ever claimed that the lot in controversy formed a part of Boll Street until the city of Dallas commenced work on it, just before the institution of this suit; that when he put up the new fence above referred to he did not dedicate or give, or intend to dedicate or give, the lot in controversy, or any part of it, for a street; nor did he ever state to any one that he had given or dedicated it for a street.'

"It is therefore admitted that the issues for the determination of the Supreme Court are as follows, viz.:

"1.   Conceding that the facts exist as viewed by the court, is its legal conclusion as contained in section 7 of this statement correct, viz.: 'The court held, that plaintiff having in 1884 removed the old fence from the lot in controversy, and having built a new fence about the line of the street, excluded from his inclosure the lot in controversy; and having permitted the public to travel over the same as a street without objection, and having accepted pay from his vendor for said lot, on his (plaintiff's) representation that it was in the street, that plaintiff was thereby estopped from asserting ownership in said lot, and was held conclusively to have dedicated the same for a public street.'

"2.   Is the finding of the court, to the effect that plaintiff demanded and received pay from Clark for the lot in controversy, upon the ground that it was a part of the street, against the evidence?

"3.   Does the evidence show that plaintiff is entitled to a judgment?

"4.   Admitting the truth of the matters relied on by defendant, can it rely upon them for the purpose of defeating plaintiff's cause of action?"

If the fact that the plaintiff after his fence had become insufficient removed and re-established it so as to make the boundary of his inclosure conform to the line of the street, had it been prolonged, stood alone, we should not hesitate to hold that it was not sufficient to show a dedication of the land in controversy to public use. It tends in some degree to show a dedication, but it is consistent with the theory that he did not intend to abandon the strip in dispute to the purposes of a street. It may be that his inclosure embraced all the land he desired

to apply immediately to his personal use, and that the conformation of his inclosure to the prolongation of the street was a mere coincidence, and therefore not an act clearly evincing a purpose to make a dedication. But it is a circumstance to be considered in connection with other evidence.

But the city having set up that the plaintiff subsequent to his purchase represented to his vendor that so much of the land as is in controversy had been dedicated for the purposes of a street, and had demanded a repayment of a proportionate part of the purchase money for that reason, and that his vendor repaid such part of the money upon that representation, the question is submitted, whether the evidence was sufficient to support the court's conclusion upon that point. That question is not difficult to determine. There was a direct conflict between the plaintiff and his vendor, both as to the representation and as to the repayment of the purchase money. The vendor in his testimony unqualifiedly affirmed both facts, and the plaintiff as unequivocally denied both. Their credibility was for the court to determine—the case having been tried without a jury—and we are not at liberty to disturb the finding. We must take both the representation and the repayment of the money as established facts.

If after his conveyance to the plaintiff the vendor had proposed to him to pay him for the strip in consideration of his dedicating it to the purposes of a street, and if he had accepted the proposition and the payment had been made, we think there would have been a dedication which the plaintiff could not have revoked. In legal effect we see no difference between such a transaction and that which actually occurred between the parties. It can not be presumed that his vendor intended to pay him for the land appropriated for a street and to leave him free to claim the land for his own use. Nor is it to be presumed that the plaintiff at the time intended to perpetrate so palpable a fraud. Neither the precise time at which this transaction occurred nor that at which the plaintiff removed his fence is shown by the agreed statement. Both occurrences took place in 1884. If they were not practically contemporaneous, the plaintiff best knew the fact and did not testify to it. It is therefore reasonable to presume that they were not without connection with each other, and in that view the removal of the fence becomes significant.

But there is still another aspect in which the case presents itself to our minds. By the transaction between them the plaintiff affirmed, and his vendor admitted, that there had been a dedication previous to the conveyance by the latter to the former. Each is estopped to deny that fact as to the other. The city limits have been extended over the property, and the city has accepted the dedication, if one existed, and had commenced to improve the street when the plaintiff forbade its doing so. Such dedications are most usually supported on the ground

of estoppel; but sometimes they result from contract. The difficulty of maintaining a dedication upon the latter ground results from that provision of the statute of frauds which requires conveyances of land to be in writing. But in Atkinson v. Bell, 18 Texas, 474, the court, in speaking of the dedication in that case, say: "Nor was the Methodist society which worshiped at that place incorporated, but neither of these facts, viz., that the dedication was by parol or that there was no grantee capable of taking by grant, has the effect of defeating the donation. The rules of law in support of these positions will be found very fully and clearly expounded in Beattie and Ritchie v. Kurtz, 2 Peters, 566, and in The City of Cincinnati v. The Lessees of White, 6 Peters, 432." As against an estoppel in favor of the city, it may be objected that it has been put in no worse position. But to this it may be answered, that but for the dedication the city may have taken steps to condemn the property to the use of the street, as it would have had the clear right to do. The dedication, which we think grew out of the transaction between the plaintiff and his vendor, or which at least was evidenced by that transaction, was for the benefit of the public, whose representative the city became when its limits were so extended as to include the property; and it is the rule in this court that a transaction between two persons made for the benefit of a third may confer upon such third person a right which may be enforced through the courts. It would seem, therefore, that when the city accepted the dedication it became invested with the rights of Clark, the vendor, which grew out of the transaction. It would seem that in such a case, for the protection of the rights of one who has paid for the street as already dedicated or to be dedicated to the public, the city ought to be permitted to assert the dedication. If the estoppel exists in favor of an individual for the benefit of the public, why should not the representative of the public after it has accepted the dedication be permitted to enforce the right for the benefit of those for whom it is made? Such in our opinion has been the practical application of the law upon this subject by the courts.

The decision in Gilder v. Brenham, 67 Texas, 347, does not conflict with these views. In that case not only had there been no acceptance of the alleged dedication, but there had been an express relinquishment of any claim upon it by the city council. Galveston v. Williams, 69 Texas, 449, is also in harmony with our conclusions in the present case. There, although the alleged dedication had been made many years before, the land claimed as a street had remained inclosed until the time of the trial, and the city had done no act indicating an acceptance on its part.

We conclude that there was no error in the judgment, and it is therefore affirmed.

*Affirmed.*