CURETON, C. J. The opinion of the Commission of Appeals answering certified question is adopted, and ordered certified to the Court of Civil Appeals.

---

**LADIES' BENEV. SOC. OF BEAUMONT v. MAGNOLIA CEMETERY CO.**

(No. 744—4338.)

(Commission of Appeals of Texas, Section A. Dec. 8, 1926.)

**I. Dedication** ⊚⟳15—**Owner's intention to dedicate property to public use may be manifested by express declaration or by conduct.**

Intention of owner to dedicate property to public use may be manifested by expressed declaration, or by acts and conduct with reference to such property from which such intention may be fairly implied.

**2. Dedication** ⊚⟳15—**"Dedication" cannot be established by public user, in absence of manifested intention of owner to surrender dominion thereof to public.**

Mere use by public of property without manifested intention on part of owner to surrender dominion over the use of the same is insufficient to establish a "dedication" to public use.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dedication.]

**3. Dedication** ⊚⟳45—**Where deed gave roadway to defendant alone, failure to inclose and occasional public user raised no issue of dedication in suit involving right of user of adjacent landowner.**

In suit involving right of adjacent landowner to use roadway previously granted to defendant, where neither context of deed nor surrounding circumstances indicated intention to grant public right to user, evidence *held* insufficient to raise issue of dedication, though defendant left roadway outside its inclosure for 20-year period during which road was used at intervals by public.

**4. Easements** ⊚⟳5—**Right of way by prescription can be established only by showing uninterrupted use by public under adverse claim of right for statutory period.**

In order to establish a right of way by prescription, it is necessary to show that an un-

interrupted use of the way has been made by public, under adverse claim of right, for statutory period of limitation.

**5. Easements** ⊚⟳36(3)—**Adverse claim of right necessary to establish right of way by prescription may be proved by circumstantial evidence.**

Adverse claim of right necessary to establish right of way by prescription may be proved by circumstantial evidence sufficient to sustain conclusion, but it must be proved by legal evidence, else alleged prescriptive right fails.

**6. Easements** ⊚⟳8(1)—**Public use of another's land will never ripen into prescriptive right unless user was under adverse claim of right known to owner.**

Use of another's lands by public as roadway with acquiescence of landowner will not ripen into a prescriptive right, no matter how long such use may continue, unless use was by adverse claim of right of which owner had notice.

**7. Easements** ⊚⟳37—**Where public used roadway without claim of right, issue of public way by prescription held not raised.**

In suit to restrain adjoining landowner from interfering with public use of roadway, where public had used roadway at intervals, but without any claim of right adverse to owner, evidence *held* insufficient to raise issue of fact as to existence of public right of way by prescription.

**8. Easements** ⊚⟳1—**Deed conveyed merely easement as to roadway which did not prevent user by grantor, as holder of fee.**

Deed which designated strip of land as roadway *held* to convey only easement therein, which did not prevent continued use by grantor as holder of fee.

**9. Easements** ⊚⟳52—**Grantor's right to use roadway conveyed by him did not inure to subsequent purchaser of adjacent property from grantor.**

Right of grantor to use roadway conveyed to defendant did not inure to subsequent purchaser of adjacent land from grantor, so as to entitle such purchaser to use roadway, as grantor's right arose merely by virtue of fee title thereto.

**10. Easements** ⊚⟳52—**Deed conveying roadway to defendant held to grant perpetual easement appertaining exclusively to land described in deed.**

Deed granting roadway to defendant with other lands *held*, in action by adjacent landowner to restrain defendant's interference with plaintiff's user thereof. to constitute perpetual easement, appertaining exclusively to property described in deed.

**11. Easements** ⊚⟳52—**Where neither deed granting roadway nor circumstances indicated reservation in favor of grantor's adjacent property, grantee had exclusive right as against purchaser of adjacent lands.**

Where roadway was granted to defendant in deed with other lands, and no reservation in favor of adjacent lands was contained in deed or implied by circumstances, subsequent pur-

---

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(288 S.W.)

chaser from grantor of adjacent land acquired no right to use roadway.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit for injunction by the Ladies' Benevolent Society of Beaumont against the Magnolia Cemetery Company. Judgment for defendant was affirmed by the Court of Civil Appeals (268 S. W. 198), and plaintiff brings error. Affirmed.

Gordon, Lawhon & Davidson, of Beaumont, and Chas. L. Black, of Austin, for plaintiff in error.

Orgain & Carroll, of Beaumont, for defendant in error.

HARVEY, P. J. This is a suit for injunction brought by the Ladies' Benevolent Society of Beaumont, a corporation, as plaintiff, against the Magnolia Cemetery Company, a corporation, as defendant. The plaintiff seeks to have the defendant remove its fences from a certain strip of land 30 feet in width that lies between the cemeteries under the control of plaintiff and defendant, respectively, and to restrain the defendant from interfering with the use of the said strip of land as a roadway by the plaintiff and the general public. Upon trial of the case the trial court, at the conclusion of the evidence, instructed the jury to render a verdict for the defendant, which was done. Judgment was rendered for the defendant, and the plaintiff prosecuted an appeal therefrom to the Court of Civil Appeals, which court affirmed the judgment of the trial court. 268 S. W. 198. The case is now before us on writ of error.

The plaintiff has and controls a public cemetery composed of three acres of land lying north of and adjacent to the strip of land in dispute. The defendant has and controls a cemetery composed of 13 acres of land lying south of and adjacent to the strip of land in dispute. In 1921, shortly prior to the filing of this suit, the defendant extended its fences so as to inclose within its cemetery the strip of land in dispute. The plaintiff alleges that this strip of land has become a public roadway in one or the other of three ways, to wit, by (1) dedication by William McFaddin; (2) dedication by the defendant; and (3) by prescription.

In the year 1887, William McFaddin was the owner of a tract of vacant land containing approximately 190 acres. In that year, he conveyed by a special warranty deed to the defendant a tract of 13 acres of land described by metes and bounds in said deed. By said deed is also conveyed to the defendant the following:

"Also a roadway 30 feet wide, commencing 30 feet east from the place of beginning of said tract; thence in a line 30 feet from and parallel with the first line of said tract to a point 30 feet past the second or northeast corner of said tract; thence in a line 30 feet from and parallel with the second line of said tract to the Beaumont and Collier's ferry road."

The last described strip of land bounds the 13-acre tract on the north and east sides thereof. The Collier's ferry road, mentioned in the deed, bounds the 13-acre tract on the west, and a short distance to the eastward of the 13-acre tract is a bayou and timbered swamp. In 1876 William McFaddin had conveyed to "the white citizens of Beaumont" a small parcel of land for use as a cemetery, which was being so used at the time said deed to the defendant was made. This parcel of land lay southeast of the 13-acre tract conveyed to the defendant and abutted thereon at the southeast corner thereof. The south end of the "roadway" strip, that lay on the east side of the 13-acre tract, abutted on the north line of said parcel of land then being used by the white citizens of Beaumont as a cemetery. There is some evidence tending to show that there had been some travel over the uninclosed lands lying between the 13-acre tract and the bayou on the east, by people going to and returning from said old cemetery. There was also evidence tending to show that there was a trail north of the 13-acre tract leading from Collier's ferry road eastward to the bayou. What we have said gives a substantial outline of the situation as it existed, so far as disclosed by the evidence, at the time of the execution of the deed by McFaddin to defendant in 1887. Soon after obtaining said deed from McFaddin, the defendant inclosed said 13-acre tract by a fence, leaving the "roadway" strip on the outside of the inclosure, and it so remained until the year 1910. In the meantime, the 13-acre tract was being used as a cemetery. In 1889, William McFaddin conveyed by deed to one W. A. Fletcher the remaining 177 acres of his 190-acre tract of land, describing same in the deed by metes and bounds which do not include said "roadway" strip. This "roadway" is not in anywise referred to or mentioned in said deed to Fletcher.

In 1895 the plaintiff bought from the successor in title to Fletcher 3 acres of said 177-acre tract, which 3 acres compose the cemetery of the plaintiff. This cemetery is bounded on the west by Collier's ferry road and on the south by the "roadway" strip described in deed to defendant. The part of such strip lying immediately south of plaintiff's cemetery, between same and the cemetery of the defendant, is in controversy here. Before the plaintiff bought the 3 acres of land, they employed a surveyor to locate the lines thereof. When the surveyor went to survey such 3 acres, the president of the defendant company pointed out to him the fact that a 30-foot roadway lay along the north side of the fence of defendant's cemetery, and told the surveyor that same must be respected in making the survey of said 3 acres of land. The surveyor proceeded to survey and locate the

lines of said 3-acre tract as they exist at this time, leaving a space of 30 feet in width between the south boundary thereof and the north boundary of defendant's 13-acre tract. He communicated to the plaintiff what the president of the defendant company had told him about said roadway. Thereupon the plaintiff proceeded to buy said 3 acres of land, and soon thereafter inclosed same by fence, thus forming a lane between the two cemeteries. There is evidence showing that this lane, during the period of time that it remained open, was sometimes traveled by wood haulers, and perhaps others, going to and fro between Collier's ferry road and the said timbered swamp lands to the eastward. Such travel caused a distinct road or wagon trail to be defined through such lane and on eastward to the bayou. In 1902 the defendant filed for record in the office of the county clerk a plat of its cemetery, which plat shows the 13-acre tract to be subdivided into cemetery lots and blocks, with intervening walks and driveways. The said 30-foot roadway strip appears on said plat as a vacant strip bounding the cemetery proper on the north and east. In 1910 an official of the defendant company suggested to one of the officials of the plaintiff company that the defendant company was contemplating building an iron fence along their west line bordering the Collier road, and said that if the plaintiff would build a similar fence along the west line of the plaintiff's cemetery bordering on Collier's road, the defendant would erect a gate at the mouth of the lane opening on Collier's road which could be used as a common entrance to the two cemeteries, and the respective fences of plaintiff and defendant, which formed said lane, could be dispensed with. He pointed out that by such means the plaintiff and the defendant would save the expense of maintaining a fence along such lane, and, besides, that the erection of an iron fence of uniform design on the west line of the respective cemeteries would present a neater appearance than the board fences then maintained, and that by having such fences built at the same time, the material and construction thereof would come cheaper and each of the parties would save something on the cost. The plaintiff agreed to such suggestion, and the work was done in accordance therewith—the plaintiff building an iron fence along the west line of its cemetery and the defendant building one along the west line of its cemetery and erecting a gate across the mouth of the lane. Thereafter the fences forming said lane were not maintained, thereby causing the two cemeteries to be embraced in one general inclosure. The gate that was constructed by the defendant at the west entrance to said lane, under this agreement, has been used a few times by the plaintiff as a means of entrance and exit to its cemetery; however, this was not the usual place of entrance and exit. In 1921 the defendant erected a fence along the north line of said "roadway" strip so as to include such strip within its cemetery and to exclude the plaintiff therefrom, and it is of this fence which plaintiff complains herein.

We have not undertaken to set out in detail the vast amount of testimony adduced, but we think that we have given a composite statement of the facts upon which the plaintiff relies for relief herein.

[1, 2] To constitute a dedication there must be an intention on the part of the property owner to appropriate the property affected to a public use. This intention may be manifested by expressed declaration of the property owner, or by his acts and conduct with reference to such property from which the existence of such intention may be fairly implied. Mere use of the property by the public, without a manifested intention on the part of the property owner to surrender to the public the dominion over the property, so fas as such use may be concerned, is insufficient to establish a dedication to public use. Oswald v. Grenet, 22 Tex. 99; Ramthun v. Halfman, 58 Tex. 553; Bryson v. Abney (Tex. Civ. App.) 171 S. W. 508; De George v. Goosley, 76 S. W. 66, 33 Tex. Civ. App. 187; Worthington v. Wade, 82 Tex. 26, 17 S. W. 520; Parisa v. City of Dallas, 83 Tex. 256, 18 S. W. 568.

[3] Prior to the time McFaddin made the deed to the defendant in 1887, he had done no act, so far as disclosed by the evidence, from which a dedication of the strip of land for use as a public road may be fairly implied. Nor do we think that a dedication to the public is shown by his said deed to the defendant. Whatever rights were conveyed by such deed were conveyed to the defendant and not to the public. Nothing appears in the deed, or from the circumstances attending its execution, from which an inference may be properly drawn that the parties to the deed had any intention of conferring a right upon the general public to use the roadway in question, or that same was to be used as a way to reach the old cemetery at the southeast corner of the defendant's 13-acre tract, as contended by the plaintiff. We think that a dedication by William McFaddin of the strip of land in question to the public for use as a roadway is not shown by any evidence in the case. Nor does the contention of plaintiff, to the effect that the roadway was dedicated to the public by the defendant after the latter acquired its deed from McFaddin, find support in the evidence. True, the defendant left the roadway strip outside its inclosure when it fenced its cemetery, and, for a period of some 20 odd years thereafter people traveled over it, in a more or less desultory fashion, in going to and fro between Collier's ferry road and the timbered swamp lands to the eastward of defendant's cemetery. These circumstances, combined with

all the other evidence in the case, fail to raise the issue of a dedication by the defendant (authorities, supra).

[4-7] We come now to notice the contention of the plaintiff to the effect that the roadway in question is shown to be a public way by prescription. In order to establish a right of way by prescription, it is necessary to show that an uninterrupted user of the way has been made by the public, under an adverse claim of right, for the statutory period of limitation. This adverse claim of right may be proved by circumstantial evidence, sufficient to sustain the conclusion, but it must, nevertheless, be proved in some way by legal evidence, else the alleged prescriptive right fails. The use of lands of another by the public as a roadway, with the acquiescence of the landowner, will not ripen into a prescriptive right, no matter what period of time such use may continue, unless the evidence shows, circumstantially or otherwise, that the use was by claim of right adverse to the landowner, of which adverse claim the latter has notice. Cockrell v. City of Dallas (Tex. Civ. App.) 111 S. W. 978; West v. City of Houston (Tex. Civ. App.) 163 S. W. 680; Cunningham v. San Saba County, 20 S. W. 941, 1 Tex. Civ. App. 480; De George v. Goosby, 76 S. W. 66, 33 Tex. Civ. App. 187; Railway v. Montgomery, 85 Tex. 67, 19 S. W. 1015; Gilder v. City of Brenham, 67 Tex. 345, 3 S. W. 309; 14 Cyc. pp. 1148, 1151. We think that the evidence here fails to raise an issue of fact as to the existence of a public right of way over the land in dispute by prescription.

[8-10] The plaintiff further contends that the deed from Willian McFaddin to the defendant did not operate to convey the fee in the strip of land designated therein as a "roadway," but that a mere easement, or right to use such strip of land as a roadway, was thereby granted to the defendant, and that the granting of such easement to defendant did not have effect to exclude McFaddin from the use of the strip of land in a manner not inconsistent with the reasonable enjoyment of same by the defendant as a roadway. We fully agree to that contention, but we cannot agree to the further contention that this right, which remained in McFaddin, inures to the benefit of subsequent purchasers of adjacent lands then owned by McFaddin. The "roadway" granted by said deed constitutes a perpetual easement, which appertains exclusively to the 13-acre tract described in the deed. The rights that remained in McFaddin, relative to such strip of land, were grounded upon the fact, not that the use of such way was an appurtenance of the adjacent lands then owned by McFaddin, but that McFaddin continued to be the owner of the soil that was burdened with the easement. 14 Cyc. pp. 1161; 9 Ruling Case Law, p. 797.

[11] There is nothing in the deed to the defendant, or the circumstances surrounding its execution, from which a reservation of the use of the roadway as an appurtenance of the adjacent lands of McFaddin may be implied; therefore no appurtenant right to such use ever attached to such adjacent lands. As we have already indicated, the user rights in the strip of land, which remained vested in McFaddin after his deed to the defendant, flowed from his ownership of the servient estate in the strip of land itself, and the plaintiff has in no manner shown itself entitled to such servient estate, or to any right or interest therein.

All other contentions made herein by the plaintiff in error have received most painstaking and careful consideration, but we find no merit in any of them.

We think that the conclusion reached by the trial court and the Court of Appeals is correct, and we recommend that the respective judgments of said courts be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed.