BROWN v. CITY OF TEXARKANA et al.

No. 6729.

Court of Civil Appeals of Texas.

Texarkana.

June 3, 1954.

Rehearing Denied July 8, 1954.

Brown & Brown, Texarkana, for appellant.

Norman C. Russell, Wheeler & Wheeler, Texarkana, for appellees.

## WILLIAMS, Justice.

W. E. Brown, d/b/a Grapette Bottling and Mission Beverage Company, the defendant below, the record fee owner of a parcel of land indicated in the shaded area of the plat which follows, appeals from a judgment predicated upon jury findings, that decreed (1) that this shaded area was a public street within the corporate limits of Texarkana, Texas, to be burdened with an easement in the public generally for street purposes; (2) that Ludie Howard is the owner of the fee to the west half of the shaded area and that the east half be burdened with an easement in her behalf for street purposes; (3) that the cloud cast upon the title of Mrs. Howard, the city and the public generally caused by the registration of certain deeds under which defendant asserts title be held for naught and title be quieted in them; and (4) that appellant remove the fences he had erected on the west boundary line and across the mouth of the south boundary line of the shaded area.

In addition to pleadings in support of above two-prong decree which carried with it the order for removal of the obstructing fence, plaintiffs insofar as it affected the alleged rights of plaintiff Howard further alleged a prescriptive easement had ripened as a road or passage way to and from the land by reason of a conveyance in 1910 later herein discussed. Defendant entered a general denial.

Appellant's thirty-five points, grounded on the refusal of the court to grant his motions for an instructed verdict, exceptions to the submission of any issue and his attack on the sufficiency of the evidence to support the decree entered, raise in our opinion the sole question whether or not the evidence was sufficient as a matter of law to meet the quantum of proof necessary to establish either a common-law dedication, a prescriptive easement as a public road or that of a private road or passage way.

In response to the first four special issues the jury found that from a preponderance of the evidence "the piece of land in question was used and traveled by the public generally continuously and uninterruptedly for a period of ten years or more"; that "the public's use of such land was open, visible and notorious"; that "the use of the land in question by the public generally was adverse to defendant Brown and those under whom he claims title"; and "the use of the land in question by the public generally was commenced and continued under a claim of right inconsistent with and hostile to the claim of defendant Brown and

those under whom he claims title." Adverse possession was defined in the terms of Art. 5515, R.C.S. of Texas. The jury was further instructed that "by the term 'claim of right' as used herein is meant a use of the land in question by the public under such circumstances as reasonably showed that the public was using the land in question of its own initiative as if it owned the same and without seeking permission or consent from any one; and it is not necessary that the public should either believe or assert that it has a right to such use." We are not called upon in any point presented to affirm the correctness of this instruction on "claim of right" or to attempt to reconcile this instruction with that of "adverse possession" as given.

■ In response to special issue No. 5, the jury found from a preponderance of the evidence that on October 24, 1910, when the deed to the Barkmans was made, the Watts had dedicated the strip in controversy as a part of Waterall Street. In connection with this issue, the court instructed the jury,—"By the term 'dedicated' is meant an appropriation or setting apart of land to some public use made by the owner thereof, with the intention to appropriate or set aside to public use. By 'public use' is meant any use which is beneficial to the public and may include a street or road." The special exception leveled to special issue No. 5 that it was on the weight of the evidence is not briefed and hence we pretermit any observations on same.

The evidence adduced in support of a prescriptive easement and that of a common-law dedication are so interwoven here that our observations will be directed as far as practical to those elements and evidence, which are in common with these issues.

This plat, although not drawn to an accurate scale, will serve to present a clearer picture of the location of various properties and objects with respect to the shaded area.

In 1884, Mrs. Nannie Watts inherited a 206-acre tract of land out of the Howard Etheridge Survey. The area of about 430 x 1000 feet indicated by A–B–C–D on above plat represents that part of the tract situated north of the New Boston Road, the remainder being south of the road.

In October, 1910, Mrs. Watts joined by her husband conveyed the 50 x 180 foot parcel of land indicated on the plat to T. P. Barkman, described as follows: "Beginning at a stake on the north side of the Boston Road 307 feet east of the S.E. cor. of a tract recently sold by us to Mrs. J. Timberlake, a stake 10 ft. north from the Boston Road. Thence north 180 ft. to a stake. Thence east 50 feet to a stake on west side of street known as Waterall Street. Thence south with Waterall Street 180 feet to a stake 10 ft. N. from Boston Road. Thence west 50 feet to place of beginning." In 1947 the heirs of Barkman conveyed this parcel of land to J. W. Talbert, who immediately conveyed the same to Lindle Purtle, since deceased, and his wife, Ludie Purtle, now Ludie G. Howard, a plaintiff below. The description and location of the 50 x 180 foot lot in the deeds out of the Barkman heirs into Talbert and thence into Purtle are verbatim as above set out. The parties to the Watts-Barkman deed and the scrivenor are dead.

Prior to 1910 and subsequent thereto Mrs. Watts sold and conveyed to numerous parties parcels of land out of the area north of the New Boston Road. In March, 1928, Mrs. Watts conveyed to her son, Monroe Watts, the unsold portions in the tract. Monroe Watts in 1942 sold portions so acquired by him to Mission Beverage Company and Grapette Bottling Company, and in 1945, a portion to W. E. Brown. The latter deed included the shaded area in controversy together with an unsold area north of the Barkman lot, on west to the Summerhill Road. With the exception of the deed into Barkman and out of his heirs into Purtle, no reference is made to Waterall Street in any other deed in this record.

In 1910, since then and prior thereto, a roadway south of New Boston Road, designated as Waterall Street on above plat, was in use by the public. It is to be observed that if this street so designated Waterall Street be continued north across New Boston Road it would feed into the mouth of the shaded area. The line A–B represents the north boundary line of the Etheridge Survey and that of the Watts 206 acre tract. If Waterall Street be so projected north, it would come to a dead-end at M–N. No street or road has ever existed due north of the line M–N.

A zoning ordinance passed by the City in 1941 reflects Waterall Street as extending north to line M–N in the north boundary line of the Watts original 206-acre tract. A certified copy of the minutes of the Board of Adjustment of the City in a hearing held December 31, 1941, recites, "Upon due consideration of Mr. Monroe Watts' appeal for permission to construct a bottling works on the 3 acres in the H. Etheridge Survey, situated on the right side of New Boston Road between Waterall & Taylor Streets" (Summerhill Road), the Board "granted permission to Monroe Watts as requested, and instructed the City Engineer to issue the proper permit as applied for * * *." An ordinance, enacted April 10, 1945, by the City, rezoned from "Second Dwelling" classification to "Light Industrial," an area which was described substantially the same as last herein set out. Appellant denied that he at any time had applied to the City for a change in the zoning ordinance and Monroe Watts denied that he knew of any reference to Waterall Street being made in his application.

The area designated Waterall Street on the plat was a dirt road with no defined bed in 1910 when Barkman acquired his lot. The New Boston Road wasn't much better. Both were graveled from time to time. In recent years Waterall has been black-topped and a large amount of traffic passes over it. In 1943, when the New Boston Road was rebuilt into a modern highway, the highway department constructed a six or eight inch curb in front of the shaded area but left an approach or drive-in on the

west end of the strip. The department also constructed a submerged concrete drainage across the east side of the shaded area or west side of the Atkins property which drained to the creek on the north. No easement was obtained from any one and no one raised any objection to its location as or when constructed.

In 1919, Jno. Sullivan acquired the tract indicated on the plat from Mrs. Watts and thereafter operated a sawmill and lumber yard. A brick plant to the north was then in operation. The owner of the brick plant purchased a 19.7-foot strip indicated on plat from Sullivan to afford access from New Boston Road to the brick plant. This date is not shown but it was more than 25 years prior to this suit. In December, 1943, W. L. Atkins bought the 19.7 foot strip to a depth of 130 feet, having purchased the 50 foot wide parcel as indicated prior thereto. Subsequent to 1943, time not shown, Atkins built a garage in the path of the 19.7-foot strip. In 1952, appellant Brown enclosed the land in controversy with a fence. This fencing closed Mrs. Howard's access to her garage that she had built in late 1949, in the rear of her residence.

The 19.7-foot lane was used by customers of the brick plant and lumber yard as well as the public after its purchase until its obstruction by Atkins' garage. During a period of maybe 25 years parts of the shaded area were used by the public. As some of the witnesses described the use of the shaded area,—"the ruts would get deep and mud holes came, so the wagons zigzagged across it in going to and from the brick plant and lumber yard." Pedestrians beat out a path in their travel to get a short-cut to the New Boston Road. The west side of the shaded area as far north as the rear of Barkman's garden, according to the photos introduced in evidence, indicate a well-traveled vehicle passage. Other photos indicate an old roadway in the northeast portion but apparently abandoned for such use years prior to this suit. With the exception of a pedestrian pathway along the eastern edge of the shaded area, the photos indicate no other use of the strip by pedestrians or vehicles. Large trees still stand across the north end of the shaded area which reasonably would indicate the necessity of vehicles to turn east onto the lumber yard property to reach the brick plant. Old fenceposts extending south for about 60 feet from the north boundary line of the shaded area and about 15 feet west of and parallel with the E. B. line of the shaded area indicate the existence years ago of a fence on such line. A barb-wire fence beginning on the W. B. line of the lumber yard tract and about 220 feet north of the New Boston Road runs west across the strip. It has a gap in it next to the lumber yard which indicates a means of passage of vehicles. The evidence is silent as to when so erected. The City Fire Department and ambulances traveled over the shaded area on several occasions in answering calls to the north of the area. After the small bridge situated somewhere near the northeast corner of the shaded area rotted and caved in, date not shown, another means of access and ingress to the brick plant and lumber yard has served the public and customers.

In 1910 when Barkman bought his lot, it as well as the shaded area and other portions of the 206-acre tract were unenclosed by fence. According to the testimony of David Watts he was present at the time Barkman purchased the lot and heard Barkman say,—"Mr. Watts, I wish you would go ahead and let me have this ground" and his father said, "No, Tom, I am not going to sell you that land but I will guarantee you a way in and out here as long as you live." A year or two after Barkman's purchase, he built his home thereon where he and his family resided until their sale in 1947. Up until in 1952 the Barkman family and their successors in title traveled over the westerly part of the strip in issue in going to and from the New Boston Road to the east side of their residence and buildings on the rear of their lot. During the period from 1942 after appellant's purchases until the present time appellant's motor trucks used substantially the same passage out of New Boston Road

in traveling north around the Barkman property and on west to the bottling plants. Members of the Watts family have through the years lived in the general area of this land.

It is well settled that "irrespective of how the dedication is claimed to be made, in order to constitute a valid dedication there must be an intention on the part of the owner to devote his property to the public use, and the intention must be clearly and unequivocally manifested, whether the dedication is claimed by acts in pais or by solemn conveyances of record." 26 C.J.S., Dedication, § 11, pp. 61, 62; Ramthun v. Halfman, 58 Tex. 551, 553; Ladies Benefit Society of Beaumont v. Magnolia Cemetery, Tex.Com.App., 288 S.W. 812, 814; 16 Am.Jur., Dedication, sec. 17.

After an exhaustive study of all the facts and circumstances herein detailed and the deductions to be logically drawn therefrom in this a border line case as to intent, we would refrain as later herein qualified from concluding that the evidence is insufficient as a matter of law to meet the quantum of proof as required under above stated well-recognized rule, namely, "the intention must be clearly and unequivocally manifested." This conclusion finds support in Wolf v. Brass, 72 Tex. 133, 12 S.W. 159, which gave effect to calls in deeds for adjoinder on an alley; and in Schultz v. Shatto, Tex.Sup., 237 S.W.2d 609, which gave effect to calls for adjoinder on an alleged street in a deed that had been executed by a public official, of record for many years. Ramthun v. Halfman, 58 Tex. 551, which quotes with approval from Oswald v. Grenet, 22 Tex. 99, the rule invoked in above cases, is not in conflict, that cause being reversed because of error in the charge. In our opinion the decision in Ladies Benefit Society of Beaumont v. Magnolia Cemetery Co., supra, cited and followed in numerous subsequent decisions, is not in harmony with above decisions in the application of the rule as to quantum of proof to the facts involved.

In the instant record, we have two calls in the Watts-Barkman deed for adjoinder on Waterall Street. This deed has been of record for forty years. It is reasonable to presume that the contracting parties knew of the existence of a street called Waterall immediately to the south. Such calls for adjoinder by the grantors in the deed, the then owner of the shaded area and the lot and other lands to the west, are in our judgment tantamount to either the recognition of the existence of at least a part of such shaded area as a part of Waterall Street or the creation and dedication of same as a street. This conclusion is fortified by the import of the recitals in the Board of Adjustment decree and those in the re-zoning ordinance.

In our judgment, the character of the public's use of portions of the shaded area as hereinbefore detailed is absent that degree or character of hostility, of exclusiveness or of adverse claim necessary to mature a prescriptive right to use the shaded area as a public street. Ladies Benefit Society of Beaumont v. Magnolia Cemetery Co., supra, 288 S.W. at page 815; Sassman v. Collins, 53 Tex.Civ.App. 71, 115 S.W. 337; Goldsmith v. Humble Oil & Refining Co., 145 Tex. 549, 199 S.W.2d 773; 16 Am. Jur., Dedication, secs. 48, 49. The public's use of the area with respect to adverse claim presents a picture similar to the uses discussed in Hestand et ux. v. Johnson County, Tex.Civ.App., 206 S.W.2d 665; that character of permissive use involved in City of Gilmer v. Moyer, Tex.Civ.App., 181 S.W.2d 1008; and that joint use involved in Sassman v. Collins, supra.

The respective surveyors are in accord that between fences the south boundary line of the shaded area is 54' 8" wide and that its north boundary line is 46' 5" wide. The decree in describing the area calls for both distances to be 60 feet. The official map of the City of Texarkana which is in evidence and which indicates it was so adopted in 1941 reflects Waterall Street lying south of New Boston Road to be 60 feet wide. The evidence is silent other

than this as to the width of Waterall Street or when or by what action, public or private, dedication or otherwise, it became such width. There is no evidence whatsoever it was a 60-foot street in 1910 when the Watts executed the deed to Barkman. The deed executed in 1928 by Mrs. Watts to her son Monroe Watts describes the unsold portions of the original tract by calls for distances and objects, evidently the result of an actual survey made just prior thereto of the original tract. This deed makes no reference to Waterall Street in any call. The deed does contain distance calls and adjoinder calls to various portions of the tract theretofore sold off. In such calls, the shaded area as being 60 feet wide can be located. The disposition of this question has troubled this court. The adjacent landowners are not parties to suit. If this decree remains undisturbed as to a 60-foot width, a hiatus arises as to whom and how additional footage will be contributed.

The jury findings in response to special issues Nos. 7 and 15, both inclusive, find ample support in the evidence upon which the Barkmans and their successors in title acquired at least by implication an easement over at least a part of the shaded area for some type of a road or passage way. Again we are confronted with the question that if so, what is its width, and to what depth should it extend into the shaded area?

For the reasons indicated the cause will be reversed and remanded that the case may be more fully developed not only as to field-notes descriptions of the area sought to be impressed both as to depth and width as a public road or a private passage way, but for such additional evidence that may be pertinent to that of a common-law dedication or that of a public road by prescription. Attention is directed to Humble Oil & Refining Co. v. Blankenburg, 149 Tex. 498, 235 S.W.2d 891, and authorities there cited in the disposition of the fee.

The judgment is reversed and the cause is remanded.